[S. F. No. 14187. In Bank.—December 29, 1933.]

LE ROY BALAAM, Respondent, v. PACIFIC STATES SAVINGS AND LOAN COMPANY, Appellant.

Orrick, Palmer & Dahlquist and Christopher M. Jenks for Appellant.

Jones, Balaam & Hardin, W. Reginald Jones and John F. Balaam for Respondent.

Arthur M. Ellis, O'Melveny, Tuller & Myers, James L. Beebe, John A. Rush, John L. Rush, Roscoe R. Hess, Eugene K. Sturgis, Everett W. Mattoon, County Counsel (Los Angeles), J. H. O'Connor, Assistant County Counsel, Ray L. Chesebro, City Attorney (Los Angeles), Robert J. Stahl, Deputy City Attorney, Bernard Brennan, City Attorney (Glendale), Aubrey N. Irwin, Asistant City Attorney, A. L. Lawson, Deputy City Attorney, Guy Lewis, City Attorney (Hawthorne), Harold Huls, City Attorney (Pasadena), Louis H. Burke, City Attorney (Montebello), and Richard C. Waltz, City Attorney (Beverly Hills), as *Amici Curiae* on Behalf of Respondent.

CURTIS, J.—Plaintiff and defendant each own a serial bond issued under and by virtue of the Street Improvement Act of 1911 (Stats. 1911, p. 730), both bonds being liens upon the same lot, or piece of real property. The bond owned by the plaintiff was issued on the third day of October, 1925. The bond owned by the defendant was issued on the twenty-ninth day of October, 1926. The point in issue is whether the priority of the lien under which each of the parties hereto claim is fixed by the provisions of section 23 of the Improvement Act of 1911, or by section 66 of

said act. As originally enacted, section 23 of the Improvement Act of 1911 provided in part as follows: "Said warrant, and assessment, together with the certificate, if any, of the city engineer of the quantity and character of the work done, shall be recorded in the office of said superintendent of streets, the diagram shall there be filed. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portions of lots assessed, respectively, for the period of two years from the date of said recording, unless sooner discharged."

Section 66 of the act provided that when bonds are issued to pay for any improvement under said act that: "The city treasurer shall, in addition to his other duties in the premises, report all coupon payments of principal upon said bonds to the street superintendent, who shall forthwith indorse the same upon the margin of the record of the assessment to the credit of which the same is paid, and said assessment shall be a first lien upon the property affected thereby until the bond issued for the payment thereof, and the accrued interest thereon, shall be fully paid . . . " (Stats. 1911, p. 730).

This court, in construing the act of 1911, held in the case of *Woodill & Hulse Elec. Co.* v. *Young,* 180 Cal. 667 [182 Pac. 422, 5 A. L. R. 1296], that the lien imposed under this act which was last in time was first in priority. This decision was rendered in 1919 and prior to the amendments of section 23 of the act in 1921 and 1923. By the amendment of 1921 (Stats. 1921, p. 291) the following new provision was incorporated in section 23: "Such lien shall be subordinate to all special assessment liens previously imposed upon the same property, but shall have priority over all special assessment liens which may thereafter be created against the said property." The amendment of this section in 1923 did not in any way change or affect this new provision added to the section in 1921. Section 66 has not been amended since the decision of *Woodill & Hulse Elec. Co.* v. *Young,* *supra.* The legislature did in that year, 1923, amend section 63 of said act. (Stats. 1923, p. 276.) This section prescribes the form of the bond issued in such proceedings. Prior to said amendment the bond recited that the amount of the bond "is a first lien upon the property affected".

By said amendment the word "first" in said recital was stricken out.

The bonds involved herein were both issued under said act after its amendment in 1923. Respondent contends that as the bonds were issued subsequent to 1923, the rule of priority announced in *Woodill & Hulse Elec. Co.* v. *Young, supra,* has been reversed and that the rule in force after the adoption of said amendments is that a lien for street improvements under said act which is first in time is first in priority. If section 23 of said act controls the priority of the respective liens under the two issues of bonds involved herein, then it is conceded that respondent's position must be sustained. But the appellant contends that the priority of these respective liens is determined by section 66 of said act, which, as we have seen, provides that "the assessment shall be a first lien upon the property affected thereby". It is likewise conceded that if the priority of the liens is to be determined by the provisions of section 66 of said act, the lien of the appellant must be given priority over that of the respondent.

Section 23 is found in part I of the Improvement Act of 1911. Part I of said act deals entirely with assessments for street improvements where the work is to be paid for in cash. No mention is made of assessments that are to be met by the issuance of bonds. In fact, bonds are not referred to in any section of part I of the act excepting in section 28, which is a general statute relating to reassessments and providing that proceedings to issue such reassessments are made applicable to all assessments whether they are paid in cash or by an issue of bonds. The lien provided for in section 23 is given only for two years. It is enforceable by an action in court which may be commenced at any time after the final delivery of the warrant to the contractor and within two years thereafter. It does not run in favor of the holder of any bond, but is evidenced by the assessment on file in the office of the superintendent of streets. On the other hand, section 66 is contained in part III of said act. This part deals primarily with proceedings in which the assessments are payable not in cash but by serial bonds issued against the property affected. Under this section bonds may be issued in payment of assessments amounting to twenty-five dollars or more. All assessments under twenty-five dol-

lars are payable in cash, and it is expressly provided in section 65 of the act (Stats. 1911, pp. 730, 760) as to such assessments that, "the payee of the warrant or his assigns shall retain his right for enforcing collection" of the amount due thereon as if no proceedings for a bond issue had been instituted. By said act, bonds issued thereunder may run for a period of not to exceed nine years, in which event the assessment "shall be a first lien upon the property affected thereby until the bond issued for the payment thereof . . . shall be fully paid". This is an entirely different and distinct lien from that created by section 23 of the act. It is evidenced by a written instrument, the bond. It extends for a possible period of nine years. It is enforceable by a summary sale of the property affected, conducted by the treasurer of the city. A cumulative remedy is also given by permitting the bondholder to foreclose his lien by an action in court. The provisions of section 23 are not expressly made applicable to the lien given under section 66 of the act and we find nothing in the whole act, or in any part thereof, which by implication can be construed as applying the provisions of section 23 to the lien created by section 66 of the act. Therefore, it seems clear to us that the provision in section 23 that the lien to secure the assessment shall have priority over all special assessment liens which may thereafter be created has no application to, and in no way governs, the lien given by section 66 of the act.

Respondent contends that there was but one type of lien contemplated by the act of 1911 and that section 23 applies with equal force to all liens created thereunder. We cannot agree with this contention. It is based upon the assertion that there is but one assessment whether the work is to be paid for in cash or by an issue of bonds, and that that assessment is the one provided for in section 23 of the act. But the proceedings preceding the making of this assessment are entirely different when the cost of the improvement is a cash transaction than when bonds are to be issued in payment of said improvement. At the very inception of proceedings involving a bond issue, by section 59 of the act (Stats. 1911, pp. 730, 758), the city council must determine whether "serial bonds shall be issued . . . to represent assessments of twenty-five dollars or over for the cost of any work or improvement". Section 61 provides that

"when said City Council shall determine that serial bonds shall be issued to represent the expense of any proposed work or improvement under this act, it shall so declare in the resolution of intention". From then on until the bond is finally issued the proceedings are based solely upon the determination of the city council that the work or improvement is to be paid by an issue of serial bonds. The only liability created against the property owner whose assessment is twenty-five dollars or over is to pay the bond according to its terms when it is issued. The filing of the assessment and the issuance of the warrant creates no liability against him to pay his assessment in cash, and, therefore, there can be no lien against his property for the period of two years or for any other period of time to secure the payment of said assessment. The lien contemplated by the act when the improvement is to be paid by the issuance of bonds is that which arises and is created by the issuance of the bond itself, and then, according to section 66 of the act, "the assessment shall be a first lien upon the property affected thereby until the bond . . . shall be fully paid". This lien is entirely different and distinct from the lien given to the contractor under section 23 of the act when the assessment is payable in cash.

*Amici curiae* make the further contention that the Improvement Act of 1911 relating to bonds merely provides a convenient device to permit payment of the assessment in installments and to that end continues the lien provided in section 23 and provides necessary methods of enforcing said lien. We may agree with this statement in so far as it declares that the provisions of the act of 1911 relating to the issuance of serial bonds provides a convenient device or plan to permit the payment of the assessment in installments rather than in one cash payment, but we find nothing in the act to justify the contention that the period of two years, provided by section 23, the life of the lien in case the assessment is payable in cash, has been extended to cover the life of the bond. There is not one word to be found in the whole act which supports such a statement. The act clearly creates two different distinct liens as we have, we think, clearly shown. By section 23, the precise words used are, "the several amounts assessed *shall be a lien upon the lands*". Which words the respondent concedes to be suffi-

cient to create a lien. Under part III of the act, after providing that the city treasurer shall issue to the contractor a bond representing each assessment over twenty-five dollars in amount, section 66 expressly states that the "assessment for which said bond was issued *shall be a first lien* upon the property affected until the bond issued for the payment thereof . . . shall be fully paid". It will be noted that the same expression "shall be a lien" is used in each of the two sections. If by the use of these words in section 23 a lien is created, it would seem to follow without question that the same words in section 66 produce a like result. *Amici curiae* in this connection contend that the lien given is to secure the assessment in each instance and not the bond. We question whether this statement is strictly correct. There is language in the act strongly intimating that the bond is issued in payment of the assessment. In fact, the very language of section 66 so states where it provides that the "assessment shall be a first lien upon the property affected thereby until the bond issued for the *payment thereof* . . . shall be fully paid". The words "payment thereof" which we have italicized refer to and mean payment of the assessment. The language just quoted we admit is not entirely clear. To state that the assessment shall be a lien on the property until the bond given in payment of the assessment is paid is the statement of a paradox. If the assessment is paid by the bond, then it is extinguished as a liability against the property owner and has no further life or vitality for that purpose. But the money due under the assessment is still unpaid. This liability after issuance of the bond is represented by the bond and is payable in accordance with the terms of the bond as prescribed by the act. That the bond supplants the assessment and represents the cost of the improvement is at least intimated by the recitals in the bond itself. It is stated therein that "This bond is issued to represent the cost of certain street work . . . , as the same is more fully described in assessment number —— issued by the street superintendent. . . . Its amount is the amount assessed in said assessment against the lot or parcel of land numbered therein, . . . and is a lien upon the property affected thereby, as the same is described herein and in said recorded assessment with its diagram." (Sec. 63.) Here is a direct and express declaration that the bond is issued to

represent the cost of the street work, and that its amount is a lien upon the lot or parcel of land improved. If the bond represents the cost of the improvement, how can it be said that the assessment is still in force and represents this same cost of improvement? We think it is clear from the terms of the act that when the cost of the street improvement work is to be paid by the issuance of a serial bond the issuance and delivery of a legal bond supersedes the assessment and the rights of the parties are fixed and determined by the terms of the bond. But whether it is the bond or the assessment which represents the liability after the bond is issued is, we think, of slight moment. Where the assessment is the result of proceedings carried forward under part I of the act, it is secured by a lien in accordance with the terms of section 23 of the act. But when the assessment results from proceedings carried forward under part III of the act, the lien securing the same is that given by section 66 of the act. Where the assessments are less than twenty-five dollars in amount, these assessments are governed by section 64 of the act, which expressly provides that they "shall be collected as hereinbefore provided in part I of this act".

*Amici curiae* have set forth in their briefs excerpts from decisions of this court in which they claim that this court has held that no lien is created by the issuance of the bond and that the only lien provided for by the act is that given to secure payment of the assessment. Under the view we take of the case, as just stated, we think it is a matter of no consequence so far as the question herein is concerned whether the lien given secures the bond or the assessment. In either case, the character of the lien is fixed by section 66 of the act. The cases from which the above-mentioned excerpts are taken are: *Hellman* v. *Shoulters,* 114 Cal. 136 [44 Pac. 915, 45 Pac. 1057], *Chase* v. *City Treasurer of Los Angeles,* 122 Cal. 540 [55 Pac. 414], *German Sav. & Loan Soc.* v. *Ramish,* 138 Cal. 120 [69 Pac. 89, 70 Pac. 1067, and *Cohn* v. *Federal Construction Co.,* 171 Cal. 547 [153 Pac. 916]. *Hellman* v. *Shoulters, supra,* sustains the constitutionality of the act of March 17, 1891, relative to a system of street improvement bonds. *Chase* v. *City Treasurer, supra,* holds that an injunction will lie to restrain the threatened sale of real property to pay an amount claimed to be

due on a void bond. *German Sav. & Loan Soc.* v. *Ramish, supra,* holds that a bond issued under the Street Bond Act of March 9, 1893, has priority over a prior mortgage upon the same property. In *Cohn* v. *Federal Construction Co., supra,* the court held that the warrant provided for under the Improvement Act of 1911 was prematurely issued and for that reason restrained the issuance of the bonds and the collection of the assessment until the council should declare the terms of the bond and cause a new warrant to issue. In none of these cases was the point raised or considered as to whether the lien, which was given to the owner of a bond issued under the Improvement Act of 1911, secured this bond, or merely the assessment.

Considerable has been said in the briefs presented by respondent as to the reasons why the act of 1911 was amended in 1921. It may possibly be that the legislature was prompted to amend section 23 of the act in 1921 by reason of the decision of this court in the case of *Woodill & Hulse Elec. Co.* v. *Young, supra.* Although this section of the act is barely mentioned in the decision along with sections 63 and 66 (p. 672), on page 674 of the decision the exact language of section 66, which creates the lien in favor of the owner of the bond, is quoted and commented on by the court, and is made the real basis of its decision. It would seem, therefore, that had the legislature intended to reverse the rule announced in this decision it would have amended section 66 as well as section 23 of the act. The fact that it did not make any change in section 66 after this court, in the *Woodill & Hulse Elec. Co.* v. *Young* case stressed the provisions of that section as it did in that decision, shows conclusively that its omission to do so was designedly done. Just why the legislature did not extend its efforts and amend section 66 of the act at the time it amended section 23 we are not advised. It is apparent that the rule making liens for street improvements superior to any subsequent liens of the same character would have a tendency to interfere with future public improvements, and might result in the cessation of all further improvements of the street thereby affected until the improvements already made were fully paid. The legislature might have considered that a cessation of public improvement for a period of two years, the life of the lien under section 23, would not

seriously hamper a community in its efforts to promote public improvements. On the other hand, the lien given under section 66, as we have seen, is made to continue for a possible term of nine years. If this lien is made prior and superior to all other liens of the same character subsequently imposed upon the same property, then we have a situation which practically puts a stop to public improvements for a long period of years, for few contractors would want to bid upon the work of an improvement when the property sought to be improved was already encumbered by prior liens. They would either refuse outright, or if they submitted a bid, it would be in many cases at so high a figure as to make the improvement too costly and burdensome for the property owner to bear. Whatever reason may have prompted the legislature to amend section 23 and to leave section 66 intact, the fact remains that that is just what the legislature did. We are satisfied that this was designedly done. To hold now with respondent and decree his lien superior to that of appellant would virtually be an act of legislation on the part of this court, a course which we have neither the power nor the inclination to pursue.

As the bonds held by the parties hereto are each secured by the lien created and defined by section 66 of said act, their priority must be determined by the provisions of said section. This section, as hereinbefore stated, provides that the lien shall be a first lien upon the property affected until the bond is paid. This court, in construing this very section, held in the case of *Woodill & Hulse Elec. Co.* v. *Young, supra,* that the lien subsequent in time was first in priority. As the bond owned by the appellant was issued over a year subsequent to the issuance of the bond of respondent, it must be given priority over the bond of the respondent.

Judgment is reversed.

Preston, J., Langdon, J., Shenk, J., Thompson, J., and Waste, C. J., concurred.

Rehearing denied.

Shenk, J., and Thompson, J., dissented.