[S. F. No. 15500. In Bank.—May 1, 1936.]

W. W. THOMPSON, Appellant, v. MINERVA E. CLARK et al., Respondents.

Eugene K. Sturgis for Appellant.

John L. McNab, S. C. Wright and Albert Mansfield for Respondents.

SEAWELL, J.—Plaintiff W. W. Thompson brought this action to foreclose the liens upon seventy-seven lots in the town of San Carlos securing seventy-seven bonds issued by defendant Town of San Carlos on April 19, 1930, for street improvement assessments levied under the Street Improvement Act of 1911. Defendants Minerva E. Clark and George D. Clark are the owners of street improvement bonds issued on June 15, 1926, under the Bond Act of 1915. The assessments for which defendants' bonds were issued also constitute liens on the lots described in the complaint. The court below adjudged the liens of plaintiff subordinate to the liens of the assessments represented by bonds previously issued on June 15, 1926, and now owned by defendants Clark. The judgment decreed foreclosure of plaintiff's liens subject to said other liens.

In *Balaam* v. *Pacific States Saving & Loan Co.*, 219 Cal. 612 [28 Pac. (2d) 1053], we held that where there are two issues of bonds under the Street Improvement Act of 1911, the liens securing the bonds issued last in time have priority over the liens securing the bonds issued first in time. Appellant contends that the same rule as to priority should obtain where the subsequent bond issue is under the 1911 act and the prior bond issue under the 1915 act.

At the time of both bond issues in the Balaam case section 23 of the Act of 1911 provided that upon recordation of the assessment in the office of the superintendent of streets, "the several amounts assessed shall be a lien upon the lands, lots, or portions of lots assessed, respectively, for the period of two years from the date of said recording, unless sooner discharged; such lien shall be subordinate to all special assessment liens previously imposed upon the same property, but it shall have priority over all special assessment liens which may thereafter be created against said property". (Stats. 1923, p. 115.) Until amendment of said section in 1921 (Stats. 1921, p. 292), it had simply provided that the several amounts assessed should be a lien, omitting the provision for determining priority as between successive special assessment liens. (Stats. 1911, p. 730, sec. 23; Stats. 1915, p. 1468.)

Section 66 of the Act of 1911 provided at the dates pertinent in the Balaam case, and still provides, that "the city treasurer . . . shall report all payments of coupons or penalties upon said bonds, with the date thereof, to the street superintendent, who shall forthwith endorse the same upon the margin of the record of the assessment to the credit of which the same are paid, and said assessment shall be a first lien upon the property affected thereby until the bond issued for the payment thereof, and the accrued interest thereon and the penalties, if any, shall be fully paid according to the terms thereof." (Stats. 1923, p. 280.)

From a reading of section 23, quoted above, as amended in 1921, it is apparent that the assessment lien therein referred to is expressly made subordinate to special assessment liens previously imposed, but superior to special assessment liens thereafter created. Thus the rule prior in time prior in right is expressly declared as to these liens. The question in *Balaam* v. *Pacific States Savings & Loan Co., supra,* was whether said section 23 as amended in 1921 regulated priority of liens when bonds had been issued to represent unpaid assessments. In reaching the conclusion that section 23 did not regulate priority where bonds had been issued, we found that two different and distinct assessment liens are created under the Act of 1911, the one the lien which exists where bonds are not issued, and the other, the lien "which arises and is created by the issuance of the bond itself". Section 23, as it then stood, did not regulate the priority where bonds

had been issued, but section 66 was the lien provision which applied where the assessments were represented by bonds. That section provided only that the assessment should be a first lien until the bonds were paid. On the authority of *Woodill & Hulse Electric Co.* v. *Young,* 180 Cal. 667 [182 Pac. 422, 5 A. L. R. 1296], we held that in such a situation the lien imposed last in time was a superior lien.

*Woodill & Hulse Electric Co.* v. *Young, supra,* also involved the priority of two liens arising under the Act of 1911. At the time pertinent in that case section 23 had not been amended to give priority to the liens there referred to in the order of their creation, but provided only that the several amounts assessed should be liens for two years from the date of the recording of the assessment. The court there declared that on reason the rule prevailing as to conflicting tax liens— that the lien last imposed is paramount—should be the rule as to priority between conflicting street assessments. The court held that section 66, providing that the assessment should be a first lien until the bonds should be paid, was not intended to apply to conflicting assessment liens under the same statute, with the result that as the statute contained nothing regarding the ranking of conflicting assessment liens, the general principle of inverse priority applicable to tax liens should be the rule. That this was the attitude of the court in the Woodill case is indicated by the following quotation:

"Finally, the point is made by *amici curiae,* arguing in support of the respondent's position, that the statute provides that the 'assessment shall be a first lien . . . until . . . fully paid'. They argue that if the assessment is to be a first lien until paid, it necessarily follows that any subsequent lien must be subordinate to it. But this result is but one horn of a dilemma which presents itself, if we assume that the language quoted was intended to include the case of conflicting liens under the statute. The language is just as applicable to an assessment for subsequent work as to the one first imposed. In other words, the statute declares equally as well in the case of the second assessment as in the first, that the lien shall be a first lien. But such lien can be first only if it is superior to the lien of the first assessment. The only escape from the dilemma thus presented is to conclude that the statute intended that when once a lien for street work is imposed on property, no further improvement of a similar

character can properly be made until such lien has been discharged by payment. Such a result, of course, would be subversive of the very purpose of the act, and it is inconceivable that it was intended.

"The true answer to the dilemma is that the language quoted was not intended to apply to the case of conflicting liens, but under the same statute. It cannot so apply, since it would make both liens, though in conflict, first liens, a manifest impossibility. The correct construction of the statute is, that by the language quoted nothing more was intended than to declare the general proposition that a street assessment lien should be a first lien on the property. *The result is that the statute contains nothing governing the ranking of conflicting liens, each imposed under the statute, and such ranking must be determined by the general principles applicable to liens of that character.* [Italics ours.] As to those general principles we have no doubt. Such liens, so far as any phase of the matter here material is concerned, are essentially tax liens imposed by public authority for a public purpose upon a *res,* and the same compelling reasons which have led to the practically universal recognition of the rule that a subsequent lien for general taxes is superior to a prior lien of the same sort lead to the same conclusion with regard to street assessment liens." (180 Cal. 667, 674.)

In so far as our decision in *Balaam* v. *Pacific States Savings & Loan Co., supra,* declares that section 66 establishes the rule of inverse priority for conflicting assessment liens represented by bonds, it is to be understood as meaning that said section, by declaring that the lien is a first lien, indicates an intention to prefer it over private liens, prior or subsequent, that is, a purpose to place it in the general class of tax liens given priority, as to which the rule is, in the absence of statutory modification, that the last in time is first in right.

Not only did section 66 fail expressly to regulate the ranking of conflicting liens arising under the same statute, that is, the Act of 1911, but it did not determine the ranking of assessment liens arising under said statute with general tax liens and assessment liens arising under other statutes. The declaration in the section, that the lien therein referred to shall be a first lien, cannot be construed as giving said lien priority over all general tax liens and other assessment liens whether imposed previously or subsequently. The provision

should be construed as referring to private liens, rather than to those existing in favor of a public agency or created for a public purpose. (*Webster* v. *Board of Regents,* 163 Cal. 705 [126 Pac. 974]; *Bolton* v. *Terra Bella Irr. Dist.,* 106 Cal. App. 313, 327 [289 Pac. 678]; *La Mesa etc. Irr. Dist.* v. *Hornbeck,* 216 Cal. 730, 739 [17 Pac. (2d) 143]; *Inglewood* v. *County of Los Angeles,* 207 Cal. 697, 707 [280 Pac. 360].) The lien referred to in section 66 has priority over private liens, whether earlier or later in time. It is thus placed by statute in the class of tax liens, and such liens, according to *Woodill & Hulse Electric Co.* v. *Young, supra,* rank in the inverse order of their creation, the last in time being first in right.

The Woodill case was followed in *Barber Asphalt Paving Co.* v. *Armstrong,* 48 Cal. App. 70 [191 Pac. 954], and *Balaam* v. *Pacific States Savings & Loan Co., supra,* in line with the Woodill case, is followed in *Conley* v. *Hawley,* 2 Cal. (2d) 23 [38 Pac. (2d) 408].

In the light of the above decisions we come now to examine the instant case, in which the bonds prior in time were issued under the Bond Act of 1915, the later bonds under the Street Improvement Act of 1911. The work of street improvement was in both instances done under the Act of 1911. (Stats. 1911, p. 730; 3 Deering's General Laws, 1931, p. 4519.) Said act, commencing with section 59, makes provision for bonds to be issued for unpaid assessments. The Bond Act of 1915 (Stats. 1915, p. 1441; 3 Deering's General Laws, 1931, p. 4644) provides an alternative plan for issuing bonds for work done and assessments levied under the Act of 1911. Each bond issued under the bond provisions of the Act of 1911 is for the specific amount of an assessment levied against a particular lot, and is secured by a lien on said lot. Upon default in payment, the bondholder may direct the city treasurer to sell the lot in satisfaction of the lien. Since 1929, section 76a of the act has provided that the bondholder as a separate and distinct and cumulative remedy may file suit to foreclose the lien of the bond and recover the amount due thereon. Bonds issued under the Bond Act of 1915 are in amounts fixed by the city council. Each bond is not a lien on a specific lot, but payments upon bonds are made into a bond redemption fund, from which the city treasurer pays bondholders *pro rata.* Hence it is provided in section 1 of the Act of 1915 that the unpaid assessments secure the bonds,

and in section 11a that the unpaid assessments constitute a trust fund for the payment of the bonds. In the event of a default by a property owner, the city treasurer causes the lot of the defaulting owner to be sold, and the proceeds of sale are paid into the bond redemption fund. Or the city may file suit to foreclose the lien of the delinquent assessment.

If bonds are to be issued under either act the resolution of intention by which the city council initiates the work of street improvement must declare the act under which they are to be issued. (Sec. 61, Act of 1911; sec. 4, Act of 1915.) Bonds, whether issued under the Act of 1911 or Act of 1915, represent unpaid assessments. The Bond Act of 1915 does not provide a special procedure for making the assessment where bonds are to be issued under the Act of 1915, but the assessment is made as provided in the Street Improvement Act of 1911. The assessment is the determination of the proportion of the cost of the improvement which shall be chargeable against each lot or parcel in the assessment district. Sections 18–21 of the Act of 1911 provide for the making of the assessment by the superintendent of streets, or the city engineer where the power is delegated to him. Said sections make no distinction in the manner in which the assessment is to be made depending on whether bonds are to be issued, or depending on the act under which the bonds are to be issued.

The assessment is made after the contractor has fulfilled his contract. A warrant, which is the contractor's authorization to collect individual assessments, is attached to the assessment, which is then recorded in the office of the superintendent of streets. After recordation the warrant and assessment are delivered to the contractor, who then is authorized to collect individual assessments. The contractor must return the warrant on or after thirty days from its recordation to the superintendent of streets, with a statement of all payments received. (Sec. 25.) If bonds are to be issued under the Act of 1911, the superintendent of streets certifies to the city treasurer a list of all unpaid assessments. (Sec. 62.) The city treasurer then issues bonds to represent unpaid assessments. (Sec. 63.) If bonds are to be issued under the Act of 1915, the superintendent of streets files the list of unpaid assessments with the clerk of the city council, a hearing is held, and the council

makes its order for the issuance of the bonds. (Sec. 5, Act of 1915.)

Bonds issued under the 1915 Act represent and are secured by assessments levied under the Act of 1911. It is section 23 of the Act of 1911, providing for recording of the assessment and delivery of the warrant to the contractor, which also provides that the several amounts assessed shall be a lien which is subordinate to earlier special assessment liens, but superior to later special assessment liens. In *Balaam* v. *Pacific States Savings & Loan Co., supra,* we held that when bonds were issued under the Act of 1911 to represent unpaid assessments, under section 66 a distinct and different assessment lien arose than that declared in section 23, and section 23 did not determine the priority of such bond assessment lien with reference to other special assessment liens. On the contrary, as held in the Woodill case, *supra,* the Bond Act of 1911 as it then stood failed expressly to regulate the priority of the lien referred to in section 66 over other special assessment liens, with the result that on general principles by analogy to tax liens, the special assessment lien last in time was prior in right. Section 11, subdivision a, of the Bond Act of 1915 corresponds in a measure to section 66 of the Bond Act of 1911. In 1926, when the bonds held by defendants Clark were issued under the 1915 Act, section 23 of the Act of 1911 read as it did at the times pertinent in the Balaam case. Is there such a difference in the provisions of the Bond Act of 1915, including section 11, subdivision a, that it can be said that section 23 of the Act of 1911 may be looked to to determine the priority of the assessment lien existing where bonds were issued in 1926 under the Act of 1915.

Section 11, subdivision a, of the Act of 1915 is as follows: "In the event of such bonds being so issued, then the assessments, which shall be unpaid, as shown on the list filed by the superintendent of streets and determined by the city council, and any reassessments which may be issued thereon or in lieu thereof, together with interest thereon, shall remain and constitute a trust fund for the redemption and payment of said bonds and of the interest which may be due thereon. Such assessments and reassessments and each instalment thereof and the interest and penalties thereon shall be and shall continue to constitute a lien against the lots and parcels of land on which made, until the same be paid, but for a period not ex-

ceeding the time within which an action might be brought on the last series of bonds issued upon the security of such unpaid assessments. *Such lien shall be prior and superior to all other liens, except the lien for state, county and municipal taxes and public improvement assessments and reassessments which may have priority thereover.''* (Italics ours.)

It is apparent that the words "prior" and "priority" as used in said section do not refer to time of creation, but to superiority of right. The sentence italicized above expressly recognizes that there may be liens for public improvement assessments which may have priority over the lien of a particular assessment for such improvements which is represented by bonds issued under the Act of 1915. But said sentence does not declare the rule to be followed in determining superiority of conflicting public improvement assessment liens. It does not state whether the earlier or the later lien shall be superior. In this respect this sentence of section 11a is like section 66 of the Act of 1911, which only provided that the lien therein referred to should be a first lien until the bond was paid, without declaring the rule to be followed in determining the priority of conflicting assessment liens.

The preceding sentence of subdivision a of section 11 of the Act of 1915 provides that the "assessments and reassessments . . . shall be and shall continue to constitute a lien against the lots and parcels of land on which made, until the same be paid, but for a period of time not exceeding the time within which an action might be brought on the last series of bonds issued upon the security of such unpaid assessments". This language is closely similar to that of section 66 of the Act of 1911 that the "assessment shall be a first lien upon the property affected thereby until the bond issued for the payment thereof, and the accrued interest thereon and penalties, if any, shall be fully paid according to the terms thereof". The bonds under both statutes are issued to represent unpaid assessments. Under both statutes it is the unpaid assessments which shall be a lien. The declaration that the unpaid assessments shall be a lien is equivalent to a statement that a lien shall exist against each parcel assessed in the amount of the unpaid assessment against it. Under neither act does the mere issuance of the bonds to represent unpaid assessments constitute a discharge and payment of said assessments. The Bond Act of 1915 repeatedly describes the assessments as un-

paid assessments after bonds have been issued, and under the Act of 1911 the assessment against a particular parcel is not marked paid on the record of the assessment until the bond issued to represent it is paid in full. (Sec. 60.) Section 62 of the Act of 1911 provides that where bonds are issued under the Act of 1911 all "unpaid assessments" are to be paid in annual payments corresponding to the number of serial payments provided to be made on the principal of the bonds issued to represent said unpaid assessments.

In the Act of 1911 it is declared that the assessment shall be a lien until the bond is paid, in the Act of 1915, that the assessments shall be and continue to constitute a lien until the same be paid. The fact that under the Act of 1911 the assessment is a lien until the bond is paid, and under the 1915 Act the assessment is a lien until the same, that is, the assessment is paid, makes no substantial difference between the two provisions as affects their relation to the lien provision of section 23 of the Act of 1911. The difference in wording is due to the fact that each bond issued under the 1915 Act is not in the amount of a separate assessment and secured by a lien on a particular parcel assessed. Payments made on a particular assessment are not applicable to a single bond, as are payments made under the Bond Act of 1911, but are paid into the bond redemption fund, from which all bondholders are paid *pro rata*. Hence the lien against a parcel assessed is discharged when an assessment against said parcel is paid in full.

We can find no distinction between the wording of section 66 of the Act of 1911 and subdivision a of section 11 of the Bond Act of 1915 which would justify a holding that section 23 of the Act of 1911 as it read in 1926 determined the priority of liens existing when bonds were issued in 1926 under the Act of 1915. If upon issuance of bonds under the Act of 1911 as it stood prior to 1927, a new lien came into existence, as declared in the Balaam case, different and distinct from the lien existing where no bonds had been issued, then it must be held that likewise upon issuance of bonds prior to 1927 under the Act of 1915 a new lien came into existence. Although but one assessment is made in the manner prescribed in sections 18–21 of the Act of 1911, whether or not bonds are to be issued, and it is the assessment which is declared to constitute a lien, it is the theory of our decision in

the Balaam case that the lien for the amount of the assessment which exists where bonds have been issued is a different lien, with different characteristics, than the lien for the amount of the assessment which exists where no bonds have been issued.

The first sentence of subdivision a of section 11 of the Act of 1915 declares that the unpaid assessments shall constitute a trust fund for the redemption and payment of bonds. All unpaid assessments constitute a trust fund for the payment of all bonds for the reason that under the Bond Act of 1915 payments on an assessment against a particular parcel are not applicable to a particular bond, but are paid to the city treasurer to be placed by him in the bond redemption fund for *pro rata* distribution among bondholders. Where bonds are issued under the Act of 1911, payments are likewise made to the city treasurer, who must place them in a special bond fund, which is certainly a trust fund for the bondholders, with the distinction that payments made on an assessment against a particular parcel go to the holder of the bond which is a lien on that parcel. (Sec. 60.)

Respondents also argue that bonds issued under the Act of 1915 should have priority over bonds issued under the Act of 1911 because it is provided in the 1915 Act that if there is no purchaser when property is offered for sale for delinquent assessments, the city shall become the purchaser, and in the event there are no available funds in the treasury, the amount necessary to purchase may be raised by levy of a special tax upon the taxable property of the city. (See *American Co.* v. *City of Lakeport*, 220 Cal. 548 [32 Pac. (2d) 622].) By reason of the fact that tax-raised funds may be used by the city to purchase upon foreclosure of street assessment liens under the Act of 1915, respondents contend that the last sentence of subdivision a of section 11 should be construed as giving priority to assessment liens existing under the 1915 Act over special assessment liens arising under other acts. Said last sentence of subdivision a provides: ''Such lien shall be prior and superior to all other liens, except the lien for state, county and municipal taxes and public improvement assessments and reassessments which may have priority thereover.'' Respondents argue that ''public improvement assessments'' in its application ''is limited to 1915 Act bonds, and refers to prior 1915 Act assessments''. In this construc-

tion the lien of assessments represented by 1915 Act bonds would be superior to all other improvement assessment liens, presumably whether such liens arose before or after issue of the 1915 Act bonds. There are other public improvement and bond acts which provide for purchase by the city with its general funds upon foreclosure of assessment liens. (For example, Stats. 1903, p. 376, sec. 25; Stats. 1915 [Improvement Act of 1901], p. 383; Stats. 1913, p. 954, sec. 14.) No reason is suggested why the legislature should wish to make the lien existing under the Bond Act of 1915 superior to all other public improvement assessment liens, including other assessment liens arising under acts providing that the city may or must purchase upon sale for delinquency, and it cannot be held that this position of superiority has been accorded liens under the 1915 Act by the general language quoted above.

We hold herein that section 23 of the Act of 1911 and subdivision a of section 11 of the Act of 1915, considered together as said sections read when the bonds owned by defendants Clark were issued in 1926, did not give priority to the assessment liens represented by said bonds over special assessment liens thereafter imposed. On the authority of *Woodill* v. *Young, supra,* followed in *Balaam* v. *Pacific States Savings & Loan Co., supra,* it must be held that said sections as they read in 1926 did not expressly regulate the priority of conflicting assessment liens represented by bonds, with the result that on the principles declared in the cited cases, the lien last in time would be prior in right. But it does not follow in the instant case that the court below erred in decreeing that the liens of plaintiff Thompson for bonds issued in 1930 under the Act of 1911 were subordinate to the lien of the assessment represented by the bonds issued in 1926 under the Act of 1915, and now owned by defendants Clark. The bonds owned by plaintiff Thompson were not issued until 1930. In 1927 section 23 of the Act of 1911 was amended. (Stats. 1927, p. 1407.) The bonds issued in the Balaam case were issued before said amendment, and the decision was there rendered with reference to the Act of 1911 as it stood at the time of issuance of the bonds. Prior to the 1927 amendment, section 23 of the Act of 1911 provided that the amounts assessed upon the recordation of the assessment should be a lien "for the period of two years from the date of said recording

unless sooner discharged". This sentence was followed by the provision heretofore noted that such lien should be subordinate to all special assessment liens previously imposed, but have priority over all later special assessment liens. By the 1927 amendment it was provided that the several amounts assessed should be a lien, and that such lien should continue "until it be discharged of record". The following sentence regulating priority was retained in the section as amended in the form in which it previously stood.

The bonds of plaintiff Thompson were issued in 1930, subsequent to the 1927 amendment of section 23. For reasons which we will hereafter state, we are of the view that as a result of said amendment, the lien of assessments for which bonds are issued under the 1911 Act are subordinate to prior assessment liens, such as the lien of the assessments represented by the bonds owned by defendants Clark, which were issued in 1926 under the Act of 1915.

Under both sections 23 and 66 of the Bond Act of 1911 it is the assessment which is declared to be a lien. The assessment is levied in the same manner whether or not bonds are to be issued, that is, in the manner prescribed in sections 18–21. Under section 23 as amended in 1927, the lien in the amount of the assessment, which arises upon recordation of the assessment in the office of the superintendent of streets, continues "until it be discharged of record". Under section 66, the lien in the amount of the unpaid assessment continues until the bond is paid in full. When can it be said that the lien arising under section 23 "is discharged of record"?

There is no provision in the Act of 1911 that said lien arising under section 23 is discharged of record when bonds are issued to represent unpaid assessments. We have heretofore pointed out that by the terms of the Act of 1911 the issuance of bonds does not constitute payment or discharge of the assessment. The assessment is not paid in full until the bond which represents it is paid in full. Section 60 of the Act of 1911 provides that when a bond is paid in full to the city treasurer he shall report that fact to the street superintendent, who is then required to mark paid, on the margin of the recorded assessment, the particular assessment to represent which the bond was issued, and "thereupon the lien of said assessment shall cease". (Stats. 1923, p. 276.)

■ The lien under section 23 arises upon recordation of the assessment in the office of the superintendent of streets. We are of the view that it can be said "to be discharged of record" only when the assessment is marked paid by the superintendent of streets on his record of the assessment, and, as provided by section 60 above, this is done only when the bond is paid in full. It follows that the lien of the assessment arising under section 23, which at the time the bonds in the Balaam case were issued continued for only two years, now continues until the bond issued to represent the assessment is paid in full. It is a characteristic of said lien, as declared in section 23, that it is subordinate to prior special assessment liens, but superior to later liens. This characteristic persists throughout the life of the lien until the bond which represents the assessment is paid in full. Section 66 also describes the lien of the assessment as continuing until the bond is paid.

■ We are of the view that by virtue of this change in section 23 the lien declared in said section is the lien referred to in section 66, and that a new lien for the amount of the assessment does not arise upon the issue of bonds. It is true that the lien possesses certain incidents after the issue of bonds which it does not possess before the bonds are issued, which incidents are among those relied on in the Balaam case as indicating that a new and distinct lien arose upon the issue of bonds. But in view of the amendment made in section 23 since the issue of the bonds in the Balaam case, which amendment has the effect of continuing the lien arising under section 23 until the bonds are paid in full, it must be held that although said lien has certain incidents after the issue of bonds which it did not possess before, a new lien is not created. The incident that it shall be subordinate to prior assessment liens, superior to subsequent assessment liens, is one which is declared in section 23 creating the lien, and this incident persists throughout its life.

It is stated in the Balaam case that the filing of the assessment and issuance of the warrant create no liability against the property owner to pay his assessment in cash, and hence there can be no lien against the property arising under section 23 when bonds are to be issued; that in such cases a lien does not arise until bonds are issued. This observation was not essential to our decision in the Balaam case. If, as sections 23 and 66 then read, a distinct and different lien arose upon

the issuance of bonds, as held in the opinion, which did not have the priority characteristics of the lien referred to in section 23, then it was not necessary to decide that no lien at all could arise upon recording of the assessment when bonds were to issue. The distinct and different lien arising upon the issue of bonds would, as the sections then read, displace the earlier lien. Even if no bonds are to be issued, the recording of the assessment and issuance of the warrant do not create an immediate liability in the sense that an action may be brought immediately to recover the assessment. Prior to 1927 an action could not be brought where bonds were not to issue until thirty-five days after the date of the warrant, and since 1927 the action may not be brought until after the first day of July next succeeding nine months following the date of the recording of the assessment.

That a lien arises upon recordation of the assessment even though bonds are to issue for unpaid assessments, seems clear from a reading of the statute. Section 23 does not declare that the lien shall arise only when bonds are not to be issued. Even though bonds are to issue, the warrant, which is the contractor's authorization to collect and receive assessments, is delivered to him after recordation of the assessment, and he is authorized to make collections and give receipts. On or after thirty days from the recordation of the warrant and assessment, the contractor returns the warrant to the superintendent of streets, with a statement of payments made on the assessment. (Sec. 25.) Section 62 provides that after the full expiration of thirty days from the date of the warrant, the street superintendent shall certify to the city treasurer a list of all unpaid assessments over $25, and bonds are then issued to represent unpaid assessments. Section 62 clearly indicates that even though bonds are to be issued under the Act of 1911 it is contemplated that during the thirty-day period the contractor shall collect and receipt for assessments. The lien in the amount of the assessments attaches upon recordation of the assessment before delivery of the warrant, and under section 23 as amended in 1927 continues "until it be discharged of record", that is until payment of the bond in full, and the marking of the assessment as paid upon the record of the assessment by the superintendent of streets. It is not essential to the existence of a lien that an immediate right of foreclosure exist. Real prop-

erty taxes become a lien as of the first Monday in March, although they are not delinquent until a later date.

That a lien arises under section 23 upon the recording of the assessment even though the resolution of intention provides that bonds are to be issued, is further indicated by the fact that the property owner, at his option, may stop the issuance of bonds under the Act of 1911 for his assessment by notifying the city treasurer that he desires no bond to be issued. (Sec. 65.) It is not provided that a lien arises upon the property owner giving notice that he does not desire a bond to issue. The lien which exists in such cases, and which the contractor may foreclose, is the lien arising under section 23, and this lien arises by the terms of the section upon recordation of the assessment. It must be held that such a lien arises as to all parcels assessed even though the resolution of intention by which the improvement is initiated by the council has provided that bonds are to be issued. This lien under section 23 as amended in 1927 continues ''until it be discharged of record'', that is, where bonds have issued, until the bond is paid in full and the record of the assessment marked paid by the superintendent of streets. Under section 23 said lien is subordinate to prior special assessment liens, such as the lien of the assessment represented by the bonds issued in 1926 under the Act of 1915, and owned by defendants Clark. Since the 1927 amendment, the lien under section 23 and the lien referred to in section 66 as continuing until the bonds are paid in full is the same lien.

Other improvement acts have modified the rule that the last special assessment in time is first in right. Section 28 of the Act of 1913 expressly provides for the priority of assessments which are earlier in time (Stats. 1913, p. 954, sec. 28; 3 Deering's General Laws, 1931, p. 4626.) Sections 8 and 21 of the Act of 1901, as amended in 1915, also make the lien prior in time prior in right. (3 Deering's General Laws, 1931, p. 4477.)

By reason of the 1927 amendment the rule that the first lien in time is first in right has now become the law as to the bonds involved in this case. We conclude that sections 23 and 66 of the Act of 1911, considered together as said sections read in 1930, when the bonds owned by plaintiff were issued, made the lien of the assessment represented by said bonds subordinate to all prior special assessment liens. It follows that the judgment for defendants, who are the owners of

bonds issued in 1926 under the Act of 1915, must be affirmed. Judgment affirmed.

Langdon, J., Shenk, J., Curtis, J., Conrey, J., and Waste, C. J., concurred.