[L. A. No. 16553.   In Bank.—July 23, 1941.]

D.   CULLINAN, Plaintiff and Respondent, v.   JOHN
ROBERT GREY et al., Defendants; CITY OF GLEN-
DALE (a Municipal Corporation), Appellant; GER-
TRUDE HAM, Cross-Complainant and Respondent.

Aubrey N. Irwin, City Attorney, A. L. Lawson, Assistant City Attorney, and Ray T. Hall, Deputy City Attorney, for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Frederick, von Schrader, Assistant City Attorney, and Robert J. Stahl, Deputy City Attorney, as *Amici Curiae*, on behalf of Appellant.

John F. Bender and Robert E. Rosskopf for Respondents.

CURTIS, J.—Plaintiff is the owner of three bonds representing special assessment liens issued in 1926 under the Improvement Act of 1911 (Stats. 1911, p. 730; Deering's Gen. Laws, 1937, Act 8199). Cross-complainant owns one bond representing a special assessment lien issued in 1928 under the said Improvement Act of 1911. Defendant city of Glendale is the owner of three bonds representing special assessment liens issued in 1929 under the Improvement Act of 1911 (Stats. 1911, p. 1192; Deering's Gen. Laws, 1937, Act 855). (This act is frequently referred to as the Street Opening Bond Act of 1911, and we will refer to it under that title.) The bonds of defendant were issued under said act to represent special assessment liens to meet the expense of a street improvement under proceedings taken under the Street Opening Act of 1903. The bonds of the plaintiff and those of the de-

fendant represent special assessment liens against the same three lots, and the bond of cross-complainant represents a special assessment lien against one of said lots. All proceedings under which the bonds and assessment liens were created were for the improvement of the same street.

As the trial court found and adjudged that the lien of each of the plaintiff's bonds was superior to the lien of the bond of the cross-complainant, Gertrude Ham, and there is no appeal from the judgment by the said Gertrude Ham, there is no issue before us as to the priority of the respective liens of the bonds of the plaintiff and the cross-complainant. The court further found and adjudged that the lien of plaintiff's bonds and the lien of cross-complainant's bond were superior to the lien of the bond of defendant, the city of Glendale, as to the lots affected by the lien of defendant. Therefore, the sole task before us is to determine the priority of the liens of the respective bonds of the plaintiff and cross-complainant on the one hand and of the appellant, the city of Glendale, on the other hand.

It is well established in this state by the decisions of this court that in the absence of any statutory enactment establishing a rule of priority for special assessment and bond liens, that such liens are ranked in the inverse order of their creation, that is to say that the last in point of time is superior in rank, or is first in priority. (*Thompson* v. *Clark*, 6 Cal. (2d) 285 [57 Pac. (2d) 490]; *Conley* v. *Hawley*, 2 Cal. (2d) 23 [38 Pac. (2d) 408]; *Balaam* v. *Pacific States Savings and Loan Company*, 219 Cal. 612 [28 Pac. (2d) 1053]; *Woodill & Hulse Electric Company* v. *Young*, 180 Cal. 667 [182 Pac. 422, 5 A. L. R. 1296].)

In the case of *Balaam* v. *Pacific States Savings and Loan Company, supra,* plaintiff's and defendant's bonds were issued under the Improvement Act of 1911 (Stats. 1911, p. 730), the plaintiff's bond in 1925 and the defendant's bond in 1926, and it was held that defendant's bond had priority over the bond of the plaintiff. The controversy in the Balaam case was thus between the holders of bonds issued in different years, under the different improvement projects against the same property and under the same statute. We held that the priority of the bond liens against said property was controlled by section 66 of said act, and that under said section the priority of the liens of the respective bonds was in the inverse order of their creation, that is, that the lien of the bond issued last in time

took priority over that of previous issue. At the date of the issuance of the bonds in that case section 23 of said act provided that the amount of the assessment should be a lien upon the lots assessed for a period of two years from the date of its recording unless sooner discharged.

In 1927, which was after the issuance of the bonds involved in the Balaam case, section 23 of the Improvement Act of 1911 was amended, but section 66 of said act remained unchanged. That portion of section 23 of said act as amended respecting the question of priority of assessment and bond liens, is as follows: "Said warrant, diagram and assessment, shall be recorded in the office of said superintendent of streets. When so recorded the several amounts assessed shall be a lien upon the lands, lots, or portion of lots assessed, respectively, and such lien shall so continue until it be discharged of record. Such lien shall be subordinate to all special assessment liens previously imposed upon the same property, but it shall have priority over all special assessment liens which may thereafter be created against said property." (Stats. 1927, p. 1406.)

The terms of the Improvement Act of 1911 were thus in force at the time the bonds of the plaintiff in the case of *Thompson* v. *Clark, supra,* were issued, and it was held in that case by reason of the 1927 amendment to section 23 of said act, that the lien of the assessments for which plaintiff's bonds were issued in 1930 was subordinate to the prior assessment liens of defendants' bonds issued in 1926 under the Bond Act of 1915. This result was arrived at by holding that by reason of said 1927 amendment of section 23 of the Improvement Act of 1911, the priority of bonds issued under said act was fixed by the terms of said amended section, in the order of their issuance, that is, the bonds issued were subject to those of a prior issue, but they were prior to those subsequently issued. The effect of that decision was to change the rule of priority approved in the Balaam case as to assessment liens represented by bonds issued under the Improvement Act of 1911 and to give priority to the lien first created. In other words, under the Improvement Act of 1911 as then in force, it was held that the bonds representing special assessment liens were subsequent to all bonds previously issued, but superior to those subsequently created under said act. It will be noted that the bonds of the defendants in the case of *Thompson* v. *Clark, supra,* were issued under the Bond Act of 1915. The difference in the terms of the acts under which the respective bonds

of the parties in that action were issued is discussed by the court, and the provisions thereof fixing the priority of bonds issued under each were held to be substantially the same.

Coming now to the facts in the instant case, we find that the bonds of both the plaintiff and cross-complainant were issued under the Improvement Act of 1911, and prior to the issuance of the bonds of the defendant, the city of Glendale, but that the latter's bonds were issued under the Street Opening Bond Act of 1911. At the time the defendant's bonds were issued (in 1929) under the provisions of the Street Opening Bond Act of 1911, the provisions of the Improvement Act of 1911 were the same as they were in 1930, when the bonds of the defendants in the case of *Thompson* v. *Clark, supra,* were issued. Therefore, insofar as the terms of the last named act govern the priority of bonds issued thereunder, the lien of the bonds of the plaintiff and cross-complainant are made superior to those issued to the defendant at a later date. But as defendant's bonds were issued under the terms of the Street Opening Bond Act of 1911, it will be necessary to ascertain whether a different rule should be applied in this case than that which was held to govern the case of *Thompson* v. *Clark, supra,* in determining the priority of the respective bond issues involved in that case.

As stated before, the bonds of defendant city of Glendale were issued under the terms and provisions of the Street Opening Bond Act of 1911 to represent assessments levied under the provisions of the Street Opening Act of 1903 (Stats. 1903, p. 376; Deering's Gen. Laws, 1937, Act 8198). This latter act, like Part I of the Improvement Act of 1911, provided for an assessment against the property of the owners to meet the expense of opening or other improvement of the street involved in the proceeding. By section 20 of the Street Opening Act of 1903 it was provided that the street superintendent should record the assessment and diagram in his office and that "Immediately upon such recording, the several assessments contained in such assessment roll shall become due and payable, and each of such assessments shall be a lien upon the property against which it is made." (Stats. 1903, p. 381.) If the assessment is not paid, the act provided for a procedure for the sale of the property subject to said lien, by the street superintendent, and upon such sale having been made, the street superintendent shall give to the purchaser a

certificate of sale and file a copy thereof in his office, and that "On the filing of the copy of such certificate in the office of the street superintendent, the lien of the assessment shall vest in the purchaser, and is only divested by a redemption of the property, as in this act provided." (Section 26, Stats. 1903, p. 383.) If no redemption of the property is made within a year, the purchaser is entitled to a deed, which deed "shall be *prima facie* evidence of the truth of all matters recited therein and of the regularity of all proceedings prior to the execution thereof, and of title in the grantee." (Section 29, Stats. 1903, p. 384.) These are the original provisions of said act providing for liens to secure assessments created in proceedings instituted thereunder. We have set forth these provisions of the Street Opening Act of 1903 simply to show that the act contained no provision which purported to fix the priority of any lien created thereunder over any other lien against the same property. As we have stated above, the bonds to pay for such improvements which might be made under said act were issued under the subsequently enacted Street Opening Bond Act of 1911. The only provision to be found in said last named act which purports to fix the priority of assessment liens created under said act is section 6 thereof, which provided as follows: "The amount due upon any such bond shall be a lien upon the lot described in such bond, superior to all other liens, charges, and incumbrances *except the liens of prior assessments* and of municipal, state and county taxes." [Italics added.] (Stats. 1911, p. 1196.) What effect is to be given to this section of the act in determining the priority of bonds issued to represent assessment liens created thereunder?

■ Defendant argues that the exception of "prior assessment liens," indicated by the italicized portion of said section above quoted, does not make such liens superior to those arising under the Street Opening Bond Act of 1911, but merely equal to or on a parity with them, and that because they are equal to the prior assessment liens, the inverse order rule applies and thus defendant's liens should prevail. It is first insisted that the word "prior" as used in section 6 does not mean first in time of creation, but superior in right only. We cannot believe that the legislature intended that any such interpretation should be given the word "prior," for if that were true, then section 6 would read: "The amount due . . . shall be a lien . . . superior to all other liens . . . except

those *superior* thereto.'' So interpreted the section would have no meaning. The word ''prior'' can only be interpreted as meaning first in time. If it is so interpreted, then the exception either places the liens on a parity or makes the liens prior in time, prior in right. If the equality interpretation is accepted and the inverse order rule applied, then the exception becomes mere surplusage and is rendered meaningless because the inverse order rule would be applicable if section 6 merely read ''superior to all other liens'' without the addition of the exception. On the other hand, if the exception is interpreted to mean that ''prior assessment liens'' prevailed over those created by the Street Opening Bond Act of 1911, then said exception would be given force and effect in that it would be a ''statutory declaration'' contrary to the inverse order rule.

In support of its contention that its liens are not inferior to but are on an equality with prior assessment liens, defendant cites the case of *La Mesa Lemon Grove and Spring Valley Irrigation Dist.* v. *Hornbeck,* 216 Cal. 730 [17 Pac. (2d) 143]. In that case the irrigation district, as holder of a special assessment lien, petitioned this court for a writ of mandate to compel certain county authorities to make orders of cancellation of certain tax sales and tax deeds on the ground that the lien held by it was made superior to the general tax lien under section 3787 of the Political Code. In 1927 that section read, in part, as follows: ''Such deed . . . is . . . conclusive evidence of the regularity of all other proceedings, from the assessment of the assessor, inclusive, up to the execution of the deed. Such deed conveys to the state the absolute title to the property described therein, free of all encumbrances, *except any lien for taxes levied for municipal, or for irrigation . . . district purposes. . . .* '' [Italics added.] In denying the writ of mandate this court held that the legislative intent was to place all taxes, including taxes in the form of assessments in favor of special agencies of the state, upon an equality before the law. Because the wording of section 6 of the Street Opening Bond Act of 1911 is similar to that of section 3787 of the Political Code, defendant argues that the exception in section 6 should be interpreted to mean that its liens are on a parity with prior assessment liens. However, we do not consider the La Mesa case to be controlling here. In that case a general tax lien was opposed to or balanced against a special assessment lien. Because every presump-

tion is against the legislative intent to prefer the lien of special assessments to those of general taxes (La Mesa case, *supra*, p. 736), we could not conclude that the special assessment liens of the irrigation district had priority over the general tax liens, and we were thus compelled to accept the alternative interpretation of equality. In the instant case no general tax lien is involved. Here we have only assessment liens of the same general character, and there is no presumption against making one inferior to another. On the other hand, as previously noted, there is good reason for interpreting the exception in section 6 as being a legislative declaration contrary to the inverse order rule.

Defendant further contends that the only "prior assessment liens" included within the "exception" of section 6 of the Street Opening Bond Act of 1911 are those arising under the Street Opening Act of 1903 (Stats. 1903, p. 376), the Street Improvement Act of 1909 (Stats. 1909, p. 1042*), and the Park Act of 1909 (Stats. 1909, p. 1066; Deering's Gen. Laws, 1937, Act 6373). Section 1 of the Street Opening Bond Act of 1911 enumerates the above mentioned acts and then provides: "The terms 'assessment' or 'assessment roll' as herein used shall mean a special assessment made under the provisions of any of the acts herein in this section specified." (Stats. 1911, p. 1192.) In using this latter provision as a basis for its argument that only the assessment liens arising under the acts enumerated in section 1 come within the exception of section 6, defendant fails to take into consideration the distinction between an "assessment" or "assessment roll" and an "assessment lien." An assessment is a charge made for the improvement of a certain piece of property, and an assessment lien is the security for the payment of such charge. The assessment is ordinarily prepared by the street superintendent when the entire cost of the improvement is ascertained, but assessment liens are not created until the assessment roll is recorded in the office of said official. The time of the creation of the lien is dependent on the particular statute involved. To illustrate the distinction reference may be made directly to the provisions of the Street Opening Bond Act of 1911 now being considered. In section 2 thereof it is provided that the city council may at or before the time of confirmation of any assessment or assessment roll in proceedings taken under any one of the three acts enumerated in section

*Repealed: Stats. 1913, p. 979.

1, determine that improvement bonds may issue to represent such assessments. In the following sections provision is made for the issuance of such bonds at the election of the property owners. Section 6 then provides that the amount due on the bonds shall be a lien superior to all other liens except prior assessment liens. That the "assessment" is made prior to and is distinct from any "assessment lien" created by the issuance of bonds under the act seems clear from a review of the provisions of the act itself. It will be noted that the provision in section 1, on which defendant relies, uses only the words "assessment or assessment roll" and makes no reference to assessment liens. The Street Opening Bond Act of 1911 was passed to provide an alternative method of financing improvements made under the acts enumerated therein. It would naturally follow, therefore, that the term "assessment" as used in the Street Opening Bond Act of 1911, should be confined to assessments made under one of those acts. However, the term "liens of prior assessments" as used in the exception in section 6, has an entirely different meaning than the term "assessment" as used in section 1, and there is no reason why the former should be controlled by the latter. The fact that work done under the enumerated acts might involve the exercise of the power of eminent domain, whereas work done under the improvement acts might not, is not a distinction sufficient to restrict the meaning of the term "liens of prior assessments." If it were, then assessment liens arising under all street opening acts should be included, and not just those under the enumerated acts.

The bonds of both plaintiff and cross-complainant and the assessment liens arising as security therefor were issued prior to those of defendant. Therefore, the exception in section 6 of the Street Opening Bond Act of 1911, under which defendant's assessment liens arose, is a statutory declaration contrary to the inverse order rule announced as applicable in previous decisions of this court, cited above, and renders the defendant's bonds subject to the prior assessment liens represented by the bonds of plaintiff and cross-complainant.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Carter, J., concurred.

Appellant's petition for a rehearing was denied August 21, 1941. Houser, J., did not participate therein.