[Civ. No. 12787. First Dist., Div. One. Feb. 15, 1945.]

M. DIEHL, Respondent, v. R. HANRAHAN et al., Defendants; FEDERAL CONSTRUCTION COMPANY (a Corporation), Appellant.

Henry F. Wrigley for Appellant.

Herbert Pothier and John F. O'Sullivan for Respondent.

WARD, J.—This appeal presents the question of priority between two assessment liens under the San Francisco Street Improvement Ordinance. It was stipulated that "ordinance No. 4720 (New Series), was enacted under the provisions of Section 33, Chapter II, Article VI of the Charter of the City and County of San Francisco, which said Charter was ratified by a Vote of the said City and County of San Francisco on May 26, 1898, and approved by the Legislature of the State of

California on January 26, 1899, and which Charter went into effect on January 8, 1900, and, with amendments thereafter enacted was in effect at the time said ordinance No. 4720 (New Series), was adopted; that said section 33 was amended November 7, 1916, and, as so amended was in effect upon the date said ordinance No. 4720 (New Series) was adopted; that said Charter, and each and all of the provisions thereof in effect on the date said ordinance No. 4720 (New Series), was adopted and on the dates it may have been amended shall be deemed in evidence.''

The ordinance provides that assessments may be levied on private property to cover the cost of street improvements, a warrant being attached to such assessment giving to the contractor or his assigns authority to demand of the property owner payment of the amount of the assessment. It is required that a diagram of the lot upon which the improvement has been made shall be attached to the warrant and assessment, and that when these are recorded, the amount assessed becomes a lien upon the property for a period of two years from the date of recordation. This lien is subordinate to all special assessment liens previously imposed upon the same property, but has priority over all special assessment liens thereafter created against it. The assessments may be paid in installments at the option of the owner and with the consent of the board of supervisors. In such event the property owner must execute a bond payable in installments. If default be made in the payment of any installment or interest, the board is authorized to sell the property to pay the amount due, or the person owning the bond may foreclose the lien created by the assessment.

The facts are not in dispute. Appellant traces its title to an assessment issued in 1927; respondent claims under an assessment issued in 1931. The case of each party was stipulated as follows:

As to the appellant, that on December 23, 1927, under and pursuant to the provisions of Ordinance No. 4720 (New Series), above referred to, the Board of Public Works of the City and County of San Francisco duly and regularly made and issued an assessment, diagram and warrant in favor of the Federal Construction Company in the sum of $1,796.12 due to said company for street improvement made by it upon a lot of land owned by Harriet Winter and Annie

Winter; that the assessment was duly recorded and demand for payment and return thereon also duly made and recorded; that on February 4, 1928, the owners of said lot duly executed bond No. 3980 for the purpose of discharging, when paid, the assessment; that only the initial payment was made on this bond, as the result of which the lot of land was offered for public sale and sold to defendant Federal Construction Company; that a certificate of sale followed, and, no redemption being had, a deed to said defendant was issued in due course and was duly recorded.

As to the respondent, the stipulation discloses the same status in relation to a similar assessment upon the same lot of land some four years later, with the additional facts that for the years 1932 to 1941 both inclusive the city and county of San Francisco levied an assessment for general taxes upon the land, which remained unpaid, and on May 13, 1942, amounted with costs, interest and penalties to the sum of $370.02, which respondent on said date paid. The lot of land had on August 29, 1933, been sold to the State of California for nonpayment of taxes for the fiscal year ending June 30, 1933, and was thereafter deeded to the state. At the time when respondent made such payment the land was subject to redemption, and such redemption was made in order to preserve respondent's claim of lien.

█ The main issue on appeal is—which bond has priority? The appealing defendant contends that the provisions of the ordinance making the amount assessed a lien and making that lien subsequent to prior assessments should apply as well to bonds executed by owners under the provisions of the ordinance. It argues that only one lien is created for any given work and that although such lien is subordinate to previous special assessment upon the property it has priority over all special assessment liens subsequently created against it. If this argument be correct, defendants took the property free and clear of plaintiff's lien.

The ordinance is divided into two parts. Section 24, part I, relates to proceedings leading up to the assessment and the lien given therefor, such assessment to be paid in a lump sum within two years. This lien does not run to the holder of a bond. Section 34 provides for the payment of the assessment in installments under the terms and conditions of a bond as the sole measure of the obligations of the property owner.

The characteristics of a lien under section 34 are independent of those of the lien imposed under section 24. Each lien is distinct and is governed by the provisions of the section creating it. Section 24 provides that the lien first in time shall have priority over all special assessments thereafter created. No such provision appears in section 34. Liens under section 24 are distinct, separate and apart from those under section 34. (*Balaam* v. *Pacific States S. & L. Co.*, 219 Cal. 612 [28 P.2d 1053].)

We are unable to find anything in *Sterling Realty Co. v. Relfe*, 21 Cal.2d 164 [130 P.2d 410], cited by appellant, that is of assistance to it. The question whether two liens were created under the provisions of the San Francisco Street Improvement Ordinance or only one was suggested in that case but not decided as it was unnecessary to the determination of the main question—the applicability of the statute of limitations.

In the Balaam case plaintiff and defendant each owned a serial bond under the Street Improvement Act of 1911. The point involved was whether the bonds were issued under one or another of two sections similar respectively to sections 24 and 34 in the present case. *Thompson* v. *Clark*, 6 Cal.2d 285, 295-296 [57 P.2d 490], construed the Balaam case as follows: "... it is the theory of our decision in the Balaam case that the lien for the amount of the assessment which exists where bonds have been issued is a different lien, with different characteristics, than the lien for the amount of the assessment which exists where no bonds have been issued." In the Thompson case plaintiff brought an action to foreclose liens upon certain lots secured by bonds issued in 1930 to cover street improvement assessments. Defendants were the owners of bonds issued in 1926. The assessments for which defendants' bonds were issued also constituted liens upon the same lots. The trial court held (affirmed on appeal) that the liens of plaintiff were subordinate to those of defendant, but this holding was based upon an amendment (Stats. 1927, p. 1406) to the 1911 act. Under that amendment bonds issued were subject to prior issue but took precedence over those subsequently issued. The bonds in the Thompson case were actually issued under the Bond Act of 1915 (Stats. 1915, p. 1468) although that act does not provide procedure for making assessments, the assessment being made under the Street Improvement Act of 1911.

The judgment here adjudged that the lien of plaintiff's street improvement bond was superior to that of defendants. Each of these bonds was issued in pursuance of section 34, which has no provision relative to priority. Plaintiff's bond was issued on November 7, 1931, and defendants' prior thereto—on February 4, 1928.

In *Woodill & Hulse Elec. Co.* v. *Young,* 180 Cal. 667 [182 P. 422, 5 A.L.R. 1296], it was held that the last lien imposed on property is paramount. In *Balaam* v. *Pacific States S. & L. Co., supra,* two bonds, held one each by the respective parties, were secured by liens created by section 66 of the Street Improvement Act of 1911. (Stats. 1911, p. 730; Deering's Gen. Laws, Act 8199.) Section 66 provided that the lien should be a first lien until the obligation was paid. Following the ruling in the Woodill & Hulse Elec. Co. case, the court held (p. 621): "As the bond owned by the appellant was issued over a year subsequent to the issuance of the bond of respondent, it must be given priority over the bond of the respondent." The court in *Smith* v. *Addiego,* 54 Cal.App.2d 230 [129 P.2d 953], involving liens for taxes and liens for special assessments, recognized that statutory language was controlling, and determined that a tax deed under the specific provisions of Political Code section 3897, as it read, operated to extinguish a street improvement bond lien.

If any confusion existed relative to the issuance of street improvement bonds where a rule of priority is not set forth as in present section 34 of the San Francisco Street Improvement Ordinance, it was clarified in *Cullinan* v. *Grey,* 18 Cal.2d 247, 249 [115 P.2d 460] as follows: "It is well established in this state by the decisions of this court that in the absence of any statutory enactment establishing a rule of priority for special assessment and bond liens, that such liens are ranked in the inverse order of their creation, that is to say that the last in point of time is superior in rank, or is first in priority. (*Thompson* v. *Clark,* 6 Cal.2d 285 [57 P.2d 490]; *Conley* v. *Hawley,* 2 Cal.2d 23 [38 P.2d 408]; *Balaam* v. *Pacific States Savings and Loan Company,* 219 Cal. 612 [28 P.2d 1053]; *Woodill & Hulse Electric Company* v. *Young,* 180 Cal. 667 [182 P. 422, 5 A.L.R. 1296].)"

In appellant's opening brief the following appears: " . . . but if it were to be suggested (contrary to our contention)

that another and separate lien is created under the bonding provisions of the ordinance in question, when the owner elects to pay the assessment in installments, then such separate lien is created only by virtue of the voluntary, affirmative act and writing of the property owner. This being so, the matter of priorities is governed squarely by Section 2897 of the California Civil Code, which provides: '. . . Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia'; and appellant's lien, being first in point of time, is first in point of priority."

It is argued that the foreclosure and sale of the lot to appellant completely wiped out respondent's rights, and that her act of voluntarily paying delinquent taxes did not give her any right of reimbursement. The act of paying the delinquent taxes was deliberate and voluntary only in the sense that respondent's position as lienholder did not legally require that she or her predecessors do so, but from a practical standpoint, if she had not made such payment and the city and county had sold the property (Pol. Code, §3787; see, also, Rev. & Tax Code, div. 1, pt. 6, ch. 4), she would have faced a problem somewhat similar to that in *Smith* v. *Addiego, supra.* She was not a stranger or an intermeddler.

Though Civil Code, section 2987, is not cited, a similar contention was presented in *Woodill & Hulse Elec. Co.* v. *Young, supra,* where, at page 668, the following appears: "The respondent's contention is that the rule generally applicable to contractual liens applies and that the one prior in time is prior in right." The court analyzed decisions from California and other jurisdictions and determined that in liens imposed for a public purpose the last is paramount. (See *Billings* v. *Delgado,* 51 Cal.App.2d 489 [125 P.2d 95], *Cullinan* v. *Grey,* supra.)

It is the general rule that the right of subrogation is given to one who, having a lien upon specific property, discharges a prior lien thereon in order to protect his own claim; and this notwithstanding that he was not compelled to do so. One who upon a supposition of ownership, which proves to be erroneous, pays taxes, may not be reimbursed, but one who pays an obligation such as taxes in order to protect his own interest is entitled to subrogation. (Civ. Code. §2876; *Weinreich* v. *Hensley,* 121 Cal. 647 [54 P. 254]; *Smith* v.

*Addiego, supra; Page* v. *Podel,* 4 Cal.App.2d 229 [41 P.2d 167]; *McMillan* v. *O'Brien,* 219 Cal. 775 [29 P.2d 183]; *Fresno Investment Co.* v. *Brandon,* 79 Cal.App. 387 [249 P. 548]; 25 R. C. L., pp. 1365-1366, §48; 50 Am. Jur., p. 699, §23.)

In view of the conclusions reached herein we do not find it necessary to consider other arguments presented by respondent.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 12, 1945. Schauer, J., voted for a hearing.