[Civ. No. 10670. Third Dist. Dec. 18, 1963.]

DELBERT R. SCHIFFNER et al., Plaintiffs and Respondents, v. THEODORE PAPPAS et al., Defendants and Appellants.

Mathews & Traverse and Francis B. Mathews for Defendants and Appellants.

Archibald D. McDougall for Plaintiffs and Respondents.

FRIEDMAN, J.—Appellants (whom we shall refer to collectively as "Pappas") filed a notice of appeal from adverse judgments in superior court actions No. 13028 and No. 13046. These actions had been consolidated for trial. Pappas' brief on appeal attacks only the judgment in No. 13046. We regard the appeal from the judgment in No. 13028 as having been abandoned, and the appeal in that action is dismissed.

Pappas entered into a contract with respondents (referred to herein as "the Schiffners") to purchase a sawmill on deferred installment payments; to buy timber rights and to engage the Schiffners to log the timber purchased. The contract provided that on Wednesday of each week, Pappas would pay the Schiffners for all logs delivered and logging services performed during the preceding calendar week at specified rates per thousand board feet. The contract provided that default in any payment would give the Schiffners an option to terminate the entire contract unless Pappas elected to perform within 30 days after the Schiffners gave notice of default. The contract contained no provision for interest on tardy payments.

On Wednesday, September 27, 1961, Pappas failed to pay the Schiffners $17,538.40, comprised of sums due for logs delivered and logging operations performed during the preceding calendar week. Earlier, Pappas had failed to pay the September 1 installment on the sawmill purchase. On October 10, 1961, the Schiffners gave Pappas a notice of election to declare the latter's default. The parties then entered into discussions which culminated in payment of sawmill purchase installments in arrears and an extension agreement dated November 9, 1961, covering the $17,538.40. The pertinent portion of the extension agreement read as follows: "Time for payment of the sum of $17,538.40 for logs delivered to payors during week ending September 22, 1961, is hereby extended to January 10, 1962; and in consideration of

such extension of time, payors hereby waive the 30-day notice mentioned in paragraph 3 of Part IV of said written contract and consent that in the event of failure of payors to pay said last-mentioned sum on or before said last-mentioned date, Schiffner Brothers may thereupon proceed pursuant to said Paragraph 3 the same as if such notice had been given and the said default had remained uncured during said 30-day period ending on January 10, 1962.''

January 10 passed without payment of the $17,538.40. On January 15 the Schiffners sent Pappas a notice terminating the contract. Pappas' attorney then sent a letter to the Schiffners stating that Pappas would present himself to the Schiffners on January 22 with a check for $17,538.40 and would also tender any amount of interest reasonably due for use of the money during the 12-day period from January 10 to January 22. The letter stated: ''... your purported termination of the agreement is rejected.''

On January 25 (three days beyond the appointed date) Pappas' agent, Frank Black, called at the Schiffners' office. He handed Robert Schiffner a certified check for $17,538.40. Robert Schiffner remarked that the check did not include interest. He also inquired whether the check was delivered unconditionally or on the condition that the Schiffners reinstate the contract. Black was unable to say whether the tender was unconditional. As to interest, his testimony is not clear; either he disclaimed knowledge of interest or said that interest would be paid later. Robert Schiffner handed the check back to Black with the suggestion that he send the check to the Schiffners' attorney in Sacramento. Black then left with the check. The check was returned to the certifying bank for credit.

Pappas then filed action No. 13028 against the Schiffners, seeking a declaratory judgment that the contract was still in force. The Schiffners filed an answer, alleging termination of the contract. In action No. 13046 the Schiffners sued Pappas for $17,538.40 plus interest from September 27, 1961. Pappas' answer admitted the debt of $17,538.40 and alleged several unavailing tenders. Pending the action Pappas paid $17,800 to the Schiffners on the understanding that neither side would be prejudiced. Application of the $17,800 to principal and interest assertedly due on the date of payment left a balance due of $382.95.

After trial the lower court entered a judgment in No. 13028 declaring that the agreement had been terminated. In

No. 13046 the court gave the Schiffners judgment for unpaid interest of $382.95 plus interest on the latter amount.

Sole issue on appeal is the computation of interest in action No. 13046. Counsel for Pappas contend that the Schiffners are entitled to interest at 7 per cent only between January 10, 1962 (which was the payment date fixed by the extension agreement) and January 25, 1962, on which latter date an allegedly unconditional tender was made. The trial court computed interest from September 27, 1961.

■ When a contract for payment of money is silent as to interest, the law awards interest at the 7 per cent legal rate from maturity of the obligation, provided that the amount is certain or capable of being made certain by calculation. (Civ. Code, § 3287; *Nesbit* v. *MacDonald*, 203 Cal. 219, 223 [263 P. 1007]; *Flynn* v. *California Casket Co.*, 105 Cal.App.2d 196, 208 [233 P.2d 131].) ■ On September 27, 1961, Pappas became obligated to pay the Schiffners the specific sum of $17,538.40, which sum was fixed by applying agreed rates to the quantity of logs delivered the preceding week. There was no uncertainty as to the amount due or the date of payment, hence interest commenced to run from that date.

Counsel for Pappas now claims that the amount was uncertain, because of a disputed claim by Pappas to certain credits. The dispute related to the sawmill purchase installments, not to the sum owing for timber and logging operations performed during the calendar week preceding September 27. The latter sum was fixed.

■ The parties entered into the extension agreement of November 9, 1961, without mentioning and without any apparent thought of interest. In the silence of the extension agreement Pappas objects to imposition of interest prior to the January 10 maturity date of the extension agreement. The objection overlooks the fact that the November 9 arrangement was only an extension, not the principal source of the financial obligation. At the time of execution of the extension agreement, the debtor was already in default, since the principal obligation had matured on September 27. Thus the question is not whether the November 9 agreement extended the maturity date of the principal obligation, but whether it suspended interest which had previously started to accrue.

■ Interest on liquidated claims allowed under Civil Code section 3287 constitutes damages for breach of a contract to pay money. (*Lineman* v. *Schmid*, 32 Cal.2d 204, 209

[195 P.2d 408, 4 A.L.R.2d 1380]; Rest., Contracts, § 337; 5 Williston on Contracts (rev. ed.) § 1410; 5 Corbin on Contracts, § 1045.) Although in this case the debtor's obligation to pay was suspended by the extension agreement, the creditors continued in deprivation of the use of money concededly owed them. Their damages continued, although their entitlement to payment was suspended. They gave the debtor more time to pay, but not necessarily without interest. Thus it seems quite logical and just to conclude that, in the silence of the extension agreement, its execution did not suspend continued accrual of interest. Meager authority so holds, and we do too. (*Timmons* v. *Rainey* (Tenn. Ch.App.) 55 S.W. 21, 30; *Rollman* v. *Baker*, 24 Tenn. (5 Humph.) 406; *Powell* v. *Guy*, 20 N.C. 66; see also 47 C.J.S., Interest, § 49, p. 61.)

 Finally, Pappas contends that offer of the certified check on January 25 was a valid tender which terminated the accrual of interest. (Civ. Code, § 1504.) The tender was ineffectual if accompanied by conditions which the Schiffners were not bound to perform. (Civ. Code, § 1494.) When Black brought the certified check to the Schiffners on January 25, he was unable to say whether the offer was unconditional or whether it was conditioned on continuation or reinstatement of the contract. The last definite word on this score from Pappas consisted of his attorney's letter, stating that he was insisting on continuation of the agreement and rejecting the "purported termination." There is no contention here that Schiffners were bound to reinstate the contract. Indeed, in action No. 13028 that issue has been decided adversely to Pappas and the judgment in that action is final. Thus the tender of January 25 was accompanied by conditions which the Schiffners were not bound to accept, hence it was unavailing to stop continued accrual of interest.

Judgment affirmed.

Pierce, P. J., and Van Dyke, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.