[Civ. No. 28569. Fourth Dist., Div. One. June 14, 1984.]

GERALD C. ARMSTRONG, Plaintiff and Respondent, v.
GUY W. PICQUELLE, SR., Defendant and Appellant.

**COUNSEL**

Stephen L. Wheeler for Defendant and Appellant.

Arthur D. Guy for Plaintiff and Respondent.

**OPINION**

**STANIFORTH, J.**—The dispositive issue on this appeal involves a challenge to the authority of a presiding judge who signed a statement of decision and then entered judgment, pursuant to section 635 of the Code of Civil Procedure, after the trial judge who presided over the trial of the action retired without issuing such statement or judgment. No such authority exists. We reverse the judgment.

FACTS

Gerald C. Armstrong and Guy W. Picquelle entered into an oral partnership agreement to build a house on a parcel of unimproved real estate and split the profits upon its sale. The terms of the oral agreement were: Armstrong would supply the money necessary to acquire the real estate; the partnership would obtain a construction loan; Picquelle would build a house; the house would be sold upon its completion; and the construction loan and incidental expenses would be paid from the proceeds with the net profits divided equally. The parties did not specifically agree on the cost of the project or whether a contactor's fee would be available to Picquelle.

Armstrong provided the $41,125 needed to purchase a parcel of unimproved property in Fallbrook in September 1977. Both parties became obligated to Southwest Bank for a construction loan of $113,600. During the construction of the house, Picquelle paid himself a contractor's fee of

$12,000 from the loan proceeds. The house was completed in December 1978 but did not sell as the parties expected.

Armstrong paid off the construction loan in the sum of $119,275 on April 22, 1979, and began occupying the premises. He has continued to live in the house throughout this litigation. After moving in, Armstrong did additional construction work on the property totalling $26,000.

### The Legal Proceedings

Armstrong filed an action to dissolve the partnership and have an accounting. Upon trial (Mar. 1982), the court (Judge Froehlich) dissolved the partnership and provided a formula for an accounting. Applying the formula, the court assigned the real property to Armstrong and ordered Picquelle to pay Armstrong $416.95. The court found Armstrong's assumption of the partnership debt of $199,275 and the capital expenditures on the property, reduced by 10 percent, were implied loans to the partnership. Picquelle was found to have no legal right to the $12,000 contractor's fee since he was to participate in 50 percent of the profits of the partnership; his withdrawal was treated as a loan from the partnership. *All the loans were assigned a 14 percent interest rate.*

The following was then entered into the minutes of March 9, 1982: "Court announces tentative findings; that the oral agreement of the parties does not cover all aspects of a written agreement and concludes that logically the agreement of the parties was essentially the same as the first contract the parties had entered into.

"The court finds that the value of the property ($285,000) as testified to by the real estate appraiser should be discounted because of the market situation and further that costs of sale of 8 percent should be deducted. Further, the court finds that the sums of money advanced by the plaintiff to the project should be considered as loans to the partnership and plaintiff is awarded 14 percent interest on said sums for the periods of time used by the partnership. Court recesses to allow counsel time to review mathematical computations made by the court.

". . . Parties are again present and mathematical computations are reviewed and revised. A rental fee of $650 per month for the period of time the property was occupied by the defendant [*sic*] is assessed.

"The court concludes that plaintiff owes to defendant $428.00 to cover his partnership interest in the real property. Each party shall bear their own costs."

Picquelle requested findings of fact and conclusions of law on March 11, 1982. The request was not acted upon by Judge Froehlich until March 26, 1982, when the court directed Armstrong to prepare findings. The court's order was prompted by Picquelle's bringing to the attention of the clerk of court on March 26, 1982, the fact the court had made no order for the preparation of findings.

Judge Froehlich retired April 1, 1982. Armstrong filed findings of facts and conclusions of law with Presiding Judge Nares on April 8, 1982. Picquelle then filed proposed counterfindings of fact. On September 17, 1982, Presiding Judge Nares signed settled findings of fact and conclusions of law, presumably conformable to Judge Froehlich's statement of tentative findings. On September 21, 1982, Judge Nares signed the judgment and, at a later hearing, denied Picquelle's motion for a new trial. This appeal followed.

## DISCUSSION

### I

The issue of whether a presiding judge has the power to sign a statement of decision and enter judgment when the judge who heard the case is unavailable is a question of first impression.

Presiding Judge Nares signed the settled findings of fact under authority of section 635 of the Code of Civil Procedure,[1] which provides: "In all cases where the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court." Before its amendment in 1981, the section read: "In all cases *where findings of fact and conclusion of law are not required or have been waived* and the decision of the court has been entered in its minutes, and when the judge who heard or tried the case is unavailable, the formal judgment or order conforming to the minutes may be signed by the presiding judge of the court." (Italics added.)

The section was amended in order for it to conform to 1981 legislative amendments of section 632, which eliminated the requirement of findings of fact and conclusions of law and provided in their stead that upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted more than one day, made before the submission of the matter for decision, the court shall

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

issue a *statement of decision* explaining the factual and legal basis for its decision.[2] (See 1981 Summary Digest, Cal. Statutes and Amendments to the Codes, ch. 900 at p. 271.)

## II

The legislative intent in amending section 635 is clear. The amended section authorizes the signing of a formal judgment by the presiding judge only where (1) no statement of decision has been requested or (2) the judge who has heard the evidence has already provided the parties with a *statement of decision* upon their request for it. The statute does not, as Armstrong impliedly contends, authorize the presiding judge to enter a formal judgment whenever the judge who has heard the evidence has orally entered a tentative decision, or tentative findings (as did Judge Froehlich here) in the minutes.

This is evident when one looks to the statutory amendments in context. Issuance of a statement of decision upon a party's request once the trial judge has announced a tentative decision is, as discussed above, made mandatory in section 632. To interpret section 635 to allow a presiding judge to enter *judgment* on the basis of a tentative decision entered in the minutes would strip the parties of their section 632 right to a *statement of decision* after the trial judge's tentative ruling. The legislature could not have intended to take away with one hand what it gave with the other.

Fundamental fairness grounds compel us to reject Armstrong's interpretation of amended section 635. To allow entry of a judgment by a presiding judge on the basis of a tentative ruling by a nonavailable trial judge would

---

[2]For purpose of this appeal, we treat the parties' request for findings of fact and conclusions of law and the presiding judge's eventual rendering of same as a request for and provision of a statement of decision. A statement of decision is what should have been requested and rendered as an amendment to pertinent provisions of the Code of Civil Procedure (eliminating findings of fact and requiring, in certain circumstances, a statement of decision in lieu of findings of fact eff. Jan. 1, 1982—three months before the instant trial).

Section 632 provides: "In superior, municipal and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision. The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial has been completed within one day, the statement of decision may be made orally on the record in the presence of the parties."

wrest from the parties the right to have "the judge who hears the evidence . . . decide the case" (*Swift* v. *Daniels* (1980) 103 Cal.App.3d 263, 265 [162 Cal.Rptr. 863]), depriving them of their right to a full and fair trial.

 Here, Presiding Judge Nares signed the settled findings, entered judgment, and denied Picquelle's new trial motion after Judge Froehlich—who had heard the evidence—entered his *tentative* findings in the minutes. Judge Froehlich's tentative decision, made by way of oral statement entered in the minutes, was, by definition, not "binding on the court." (Cal. Rules of Court, rule 232 (a).) No legal judgment could be entered by the presiding judge on the basis of the trial judge's tentative ruling. Nor under any reading of section 635 did the presiding judge have the authority to sign *his own* findings of fact and conclusions of law on the basis of a partial transcript of the trial, what appeared in the minutes and the parties' respective proposed findings. Such a procedure would deprive the parties of their right to a statement of decision from the judge who had heard their evidence.

In *Swift* v. *Daniels, supra,* 103 Cal.App.3d 263, the trial judge became incapacitated before requested findings of fact and conclusions of law were signed. The presiding judge signed findings under purported authority of section 635. The appellate court ruled the judgment entered on the basis of these findings could not stand, citing *Mace* v. *O'Reilley* (1886) 70 Cal. 231 [11 P. 721]. In *Mace,* the trial judge's term of office expired before he had signed findings and conclusions. In such context, the court held no proper judgment could be entered and "a new trial was inevitable, unless agreed findings should be filed or waived by both sides to the controversy." (*Id.,* at p. 234.) *Mace* and *Swift* are still the law; Armstrong's assertion the 1981 amendment to section 635 implicitly overruled these cases is without logic or authoritative support. The judgment cannot stand; a new trial is required.

### III

 For guidance of the court on retrial, we briefly address Picquelle's assertion no court may assign an interest rate above 7 percent (the legal rate of interest, Cal. Const., art. XV, § 1[3]) on an implied loan agreement, even if in hearing the case it sits as a court of equity. *Dehn* v. *Ward* (1955) 130 Cal.App.2d 680 [279 P.2d 790], fully supports Picquelle on the point. *Dehn,* like this case, involved a partnership accounting. The parties in *Dehn* had an oral express contract for the loan of money but had not agreed on

---

[3]Article XV section 1 of the California Constitution provides in pertinent part: "The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 7 percent per annum but it shall be competent for the parties to any loan or forbearance of any money, goods, or things in action to contract in writing for a [variable] rate of interest. . . ."

an interest rate. The appellate court held the trial court, sitting as a court of equity, had correctly assessed the amount of interest on the loan from the date of the loan when it applied a *7 percent per annum* rate, citing former article XX section 22 of the California Constitution, the usury provision then in effect. The provision allowed up to a 7 percent interest rate where the parties had not otherwise specified the rate in writing. Present section 1 of article XV of the Constitution is a reenactment of the usury provision cited in *Dehn. Schiffner* v. *Pappas* (1963) 223 Cal.App.2d 526, 529 [35 Cal.Rptr. 817] also supports Picquelle's argument, in holding "When a contract for payment of money is silent as to interest, the law awards interest at the 7 percent legal rate from maturity of the obligation . . . ." (See also *Flynn* v. *California Casket Co.* (1951) 105 Cal.App.2d 196, 208 [233 P.2d 131] [to same effect].)

■ Contrary to Armstrong's assertion, courts of equity must follow general maxims in rendering relief. In *Marsh* v. *Edelstein* (1970) 9 Cal.App.3d 132 [88 Cal.Rptr. 26], the appellate court held equity does not have the power to disregard or set aside the express terms of legislation: "While equitable relief is flexible and expanding, its power cannot be intruded in matters that are plain and fully covered by positive statute, nor will a court of equity lend its aid to accomplish by indirection what the law or its clearly defined policy forbids to be done directly." (*Id.*, at pp. 140-141.)

Armstrong's reliance upon *Hutton* v. *Gliksberg* (1982) 128 Cal.App.3d 240 [180 Cal.Rptr. 141] is inapposite. *Hutton* factually is a specific performance action to compel conveyance of real property. As a result of the seller's wrongful refusal to convey, the buyer incurred increased borrowing costs—a higher interest rate. The appeal court approved such *damages* as "incidental to specific performance." (*Id.*, at p. 251.)

■ Should the court on retrial find Armstrong's assumption of the partnership debt, his capital expenditures on the property, and/or Picquelle's withdrawals from the partnership funds constitute implied loans, as Judge Froehlich determined, any interest the court assesses on such loans must be at no more than a 7 percent rate.

The judgment is reversed.

Brown (Gerald), P. J., and Work, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 29, 1984.