**In re Edward ESTREITO, also known as Edward John Estreito, Jr., Debtor.**

**Edward ESTREITO, Appellant,**

v.

**CITIREALTY CORPORATION, Appellee.**

**BAP No. NC–89–1533 MeJV.**

**Bankruptcy No. 3–86–03800 TC.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Nov. 15, 1989.

Decided March 6, 1990.

Abram S. Feuerstein, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for appellant.

Leland Evans, Evans & Heil, San Mateo, Cal., for appellee.

Before MEYERS, JONES and VOLINN, Bankruptcy Judges.

MEYERS, Bankruptcy Judge:

## I

A junior lienholder claimed interest on advances made to cure a debtor's default on a senior obligation. The lienholder claimed interest at the same rate as had been charged on promissory notes between the debtor and the junior lienholder, whereas the debtor urged that interest should be limited to 7%, the "rate allowed by law" as specified in the Deed of Trust between the parties. The bankruptcy court held in favor of the lienholder, prompting a motion by the debtor for rehearing which was denied. This appeal is taken from both the order awarding interest and the order denying rehearing. We REVERSE.

## II FACTS

The debtor, Edward Estreito ("Estreito") was an investor in real estate in San Francisco. To finance his operations, he obtained three loans that are pertinent here. First was a loan of more than $1 million at 14% interest to a lender not a party to this appeal. That note was secured by a first Deed of Trust on the building known as 2960 Broadway. In 1983, Estreito borrowed $270,000 from Appellee creditor Citi-realty Corporation ("Citirealty") at 14.5%, secured by a Deed of Trust cross-collateralized against 2960 Broadway, 1800 Broadway and 300 Buchanan. In 1984, Estreito again borrowed from Citirealty, this time for $100,000 at 20%, secured by an identically worded Deed of Trust covering 2960 Broadway and 1800 Broadway.

Thereafter Estreito defaulted on his obligations under all three loans. To avoid a foreclosure on 2960 Broadway by the senior lienholder, Citirealty advanced $152,-747.80 to cure the default on the first lien. Citirealty then commenced foreclosure on its own notes and Estreito filed under Chapter 11 of the Bankruptcy Code ("Code").

## III STANDARD OF REVIEW

Questions of contract enforcement and interpretation are subject to de novo review unless extrinsic evidence was admitted on issues such as intent. *See Miller v. Safeco Title Insurance Co.,* 758 F.2d 364, 367 (9th Cir.1985); *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 417 (9th Cir.1984); *In re San Joaquin Estates, Inc.,* 64 B.R. 534, 535 (9th Cir. BAP 1986). No such extrinsic evidence appears in the Record.

The proper rate of interest on advances made by a junior lienholder in the absence of a specific agreement between the parties is governed by California statutory and common law. As such, it is reviewable *de novo. Matter of McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). *Accord, In re Contractors Equipment Supply Co.,* 861 F.2d 241, 243 (9th Cir. 1988).

Where doubt exists concerning the state law, this Panel "must make a reasonable determination, based upon recognized sources, as to the result that the highest state court would reach if it were deciding the issue." *In re North Side Lumber Co.,* 83 B.R. 735, 737 (9th Cir. BAP 1987). *Accord, In re Kun,* 868 F.2d 1069, 1070 (9th Cir.1989).

## IV DISCUSSION

This case presents issues of contract interpretation and implication under California state law. The standard form Deed of Trust agreed to by the parties permits Citirealty to pay "all incumbrances, charges and liens with interest, which ... appear to be prior or superior" to the Citirealty obligation. If sums are so paid, Citirealty may then require Estreito to repay such sums "with interest from date of expenditure at the amount allowed by law in effect at the date hereof."[1] The trial court's award of 14.5% interest to Citirealty mirrored the interest rate charged on one promissory note between the parties. This result, however fair, gives insufficient weight to the explicit Deed of Trust language.[2]

Two questions are presented: First, whether the phrase "interest ... allowed by law in effect at the date hereof" has a fixed legal meaning. Second, if the phrase is ambiguous, what interest rate should be implied by the courts to fill in the blank where no rate is effectively specified.

[1] Paragraphs 4 and 5 of the parties' Deeds of Trust read:

"To Protect the Security of this Deed of Trust, Trustor Agrees:

. . . . .

4. To pay, at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all incumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustee and without releasing Trustee from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any incumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

5. To pay immediately and without demand all sums so expended by Beneficiary or Trustee,

### A. The Legal Meaning of "Interest ... Allowed by Law"

■ Because of the plain meaning and logical inferences from the contractual language agreed to by the parties and because of precedent directly governing interest on advances by junior lienholders, we interpret the Estreito/Citirealty Deeds of Trust to refer to the legal rate of interest, which is 7%.

The applicable language of the Deeds of Trust between Estreito and Citirealty allows Citirealty reimbursement of its advances together "with interest from date of expenditure at the amount allowed by law in effect at the date hereof...." The word "allow" is a synonym for "permit" in common parlance and California courts have so held. *Brodsky v. California State Board of Pharmacy*, 173 Cal.App.2d 680, 685, 344 P.2d 68 (1959); *Markus v. Justice's Court of Little Lake Tp.*, 117 Cal.App.2d 391, 398, 255 P.2d 883 (1953). *See also In re Webb's Estate*, 269 A.2d 413, 416 (Del.Chan.1970);

with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded."

[2] In setting the proper rate of interest for the advances made by Citirealty, we focus on the alternative theories of the promissory note rate (14.5%) and the statutory rate (7%) required by the Deed of Trust. We recognize, however, that a third possibility presents itself by logic and by some California authority. Under the equitable doctrine of subrogation, Citirealty might be said to step into the shoes of the senior lienholder with respect to advances which cure debtor's defaults on obligations owed to such senior lienholder. Here, the senior obligation accrued interest at 14%; therefore, if a subrogation theory were adopted by the California courts, Citirealty would be awarded 14% on its advances. *See Diehl v. Hanrahan*, 68 Cal.App.2d 32, 37, 155 P.2d 853 (1945); *Fresno Investment Co. v. Brandon*, 79 Cal.App. 387, 389, 249 P. 548 (1926). In spite of some support for such a subrogation theory, the weight of authority in California favors an interpretation based on the 7% legal rate of the state Constitution. *See Beeler v. American Trust Co.*, 28 Cal.2d 435, 170 P.2d 439 (1946). *See also Windt v. Covert*, 152 Cal. 350, 93 P. 67 (1907).

*Snyder v. Central Vermont Ry.*, 112 Vt. 190, 194, 22 A.2d 181, 183 (1941). The interest rate permitted by California law is governed by Article XV, section 1 of the California Constitution. This states in pertinent part:

> Section 1: The rate of interest upon the loan or forbearance of any money ... shall be 7 percent per annum but it shall be competent for the parties to any loan ... to contract in writing for a [higher] rate of interest....

The Deed of Trust between Estreito and Citirealty does not specify a higher rate for advances; hence 7% is the allowed and correct rate.

This plain interpretation is greatly strengthened by logical argument. The contract states "interest ... *in effect at the date hereof.*" For two reasons, we may infer that this language intended to refer to a statutory or Constitutional rate rather than the contractual rate prevailing between Estreito and Citirealty. First, a rate that is "in effect" at the signing of a Deed of Trust is a rate that preexists the particular transaction. Generally a Deed of Trust accompanies the delivery of a promissory note at the loan closing. On that day the contract rate between the parties is not already "in effect;" hence reference to a preexisting external rate like that specified by the California Constitution helps make sense of the contract language.

Second, two promissory notes were made by Estreito in favor of Citirealty, one calling for 14.5% annual interest and another for 20%. Neither note made any mention of a variable rate of interest. Yet the Deed of Trust clearly assumes that the interest rate on advances *fluctuates* over time: why else would the contract specify the effective rate "at the date hereof." [3] This provides additional evidence that a fixed rate of neither 14.5% nor 20% was intended; and in contrast one can easily

infer that the Constitutional rate, which may change, was indeed intended.

The 7% Constitutional interpretation is strengthened yet further by case authority regarding the legal rate on creditor advances where no rate of interest is specified. In *Beeler v. American Trust Co., supra*, 28 Cal.2d 435, 170 P.2d 439, a creditor was forced to pay taxes on behalf of a debtor. As per a previous order of the court, in *Beeler v. American Trust Co.*, 24 Cal.2d 1, 147 P.2d 583 (1944), these advances joined the previous judgment and collected interest at the legal rate, which was 7%. The court stated:

> even without mention at all in the judgment, [creditor's] advances for taxes to protect its own interest would have become part of the indebtedness secured by the mortgage. ... *And such advances, in the absence of express agreement or provision to the contrary, bear interest at the legal rate from the date of payment* (emphasis supplied).

28 Cal.2d at 440, 170 P.2d 439. Leading commentators support this interpretation of *Beeler. See* 4 D. Augustine and S. Zarrow, *California Real Estate Law & Practice* section 111.22, n. 3 (1989); R. Bernhardt, *California Mortgage and Deed of Trust Practice* section 3.46, p. 119 (1979).

The parties can be considered to have known of this leading case at the time they made their agreement. Therefore if they intended an interest rate different from the legal rate, they should have specified this intention.

### B. *The Constitutional Rate Applies if the Contract is Ambiguous or if No Rate had been Specified*

■ Even if the meaning of the Deed of Trust language had not been discernable, the same result would follow: the 7% Constitutional rate would be implied. This is

---

**3.** We recognize that this Deed of Trust is the standard short form frequently used by title insurance companies in California and therefore may be written so as to cover variable as well as fixed-rate obligations. Yet if the language were referring to the variable interest rate on the *underlying obligation,* the interest rate on advances would not be fixed by "the date hereof," i.e. the date of the signing of the Deed of Trust. If reference back to a variable contract rate were intended the interest rate would be pegged to the rate of the contract prevailing at the time of the *advance,* not the date of signing.

because the above-quoted segment of the *Beeler* case, in addition to steering an interpretation of the express language used in the Estreito/Citirealty Deeds of Trust, also implies the legal rate where express language is ambiguous or absent. The *Beeler* language bears repeating: *"even without mention at all* ... [creditor's] advances ... would have become part of the indebtedness ..."* subject to the legal rate unless expressly agreed otherwise. 28 Cal.2d at 440, 170 P.2d 439 (emphasis supplied).

We note, moreover, that this result is consistent with California cases that supply interest at the 7% legal rate where for some reason the parties to a loan or payment of money fail to specify the interest rate. *See, e.g., Armstrong v. Picquelle,* 157 Cal.App.3d 122, 128–29, 203 Cal.Rptr. 552 (1984) (where parties had an oral contract for the loan of money but had not agreed on an interest rate, the California Constitutional rate of 7% is the maximum that may be recovered); *Schiffner v. Pappas,* 223 Cal.App.2d 526, 529, 35 Cal.Rptr. 817 (1963) (when a contract for payment of money is silent as to interest, the law awards interest at the 7 percent legal rate from maturity of the obligation). *Accord, Dehn v. Ward,* 130 Cal.App.2d 680, 681, 279 P.2d 790 (1955). *See also Malecky v. Malecky,* 148 Ariz. 121, 122–23, 713 P.2d 322 (1985); *International Business Machines Corp. v. Lawhorn,* 106 Idaho 194, 198, 677 P.2d 507 (1984); *Centurion Corp. v. Cripps,* 624 P.2d 706, 711 (Utah Sup.Ct. 1981).

## V CONCLUSION

An interest rate award of 7% is compelled by the plain meaning of the Deed of Trust executed by the parties, by specific case authority dealing with creditor advances and by residual principles of contract interpretation in California. Therefore the decision below must be REVERSED.