NOONAN, Circuit Judge:
 

 This case, of first impression in any circuit, turns on whether license fees, paid by a licensee for the use of technology, patents, and proprietary rights, are “royalties” within the meaning of 11 U.S.C. § 365(n)(2)(B) and, as such, must continue to be paid after the licensor in bankruptcy has exercised its statutory right to reject the contract.
 

 FACTS
 

 With slight alterations we adopt the concise statement of facts made by the BAP,
 
 In re Prize Frize, Inc.,
 
 150 B.R. 456 (9th Cir. BAP 1993):
 

 The debtor, Prize Frize, Inc., is the owner and licensor of all technology, patents, proprietary rights and related rights used in the manufacture and sale of a french fry vending machine. ■ On March 6, 1991, the debtor entered into a License Agreement granting an exclusive license to utilize the proprietary rights and to manufacture, use and sell the vending machine. In consideration for the license to use the proprietary information and related rights, the licensee agreed to pay the debtor a $1,250,000 license fee — $300,000 to be paid within ten days of execution of the agreement with the balance due in $50,000 monthly payments. The licensee also agreed to pay royalty payments based on a percentage of franchise fees, of net marketing revenues and of any sales of the machines or certain related products. The license agreement also provided that if there was a failure of design and/or components of the machines to the extent that they were not fit for their intended use and were withdrawn from service, then the licensee’s obligations would be suspended for a period of 180 days, during which time the debtor was entitled to cure any defect. Encino Business Management, Inc. (EBM) is the successor licensee under this license.
 

 The debtor filed its Chapter 11 petition on March 12, 1991. In September of 1991, EBM, which had become the licensee, stopped making the $50,000 per month license fee payments and has made no payments since. EBM contends that there is a design defect in the machines which caused the machines to be withdrawn from service and which allowed the suspension of its obligation to pay the debtor.
 

 The debtor subsequently filed a motion to reject the license agreement with EBM and to compel EBM to elect whether it wished to retain its rights under section 365(n)(l). EBM did not file a written response to the motion. At the hearing, EBM’s counsel indicated that he did not oppose rejection. He disputed, however, that EBM should be re
 
 *428
 
 quired to immediately pay $350,000 in past due license fee payments, contending that the obligation to make such payments was suspended because of the purported design defect.
 

 The bankruptcy court entered an order indicating that the debtor might reject the agreement, that EBM might elect whether to retain its rights under the agreement pursuant to section 365(n)(l) and that if EBM elected to retain its rights under the agreement it must do the following: (1) make all license fee payments presently due in the amount of $350,000 within seven days of its election; (2) pay the $400,000 balance of the license fee in monthly installments of $50,-000; and (3) waive any and all rights of setoff with respect to the contract and applicable non-bankruptcy law and any claim under section 503(b) arising from performance under the agreement. The court’s order also stated that assuming,
 
 arguendo,
 
 that EBM’s payment obligations were properly suspended, the 180-day suspension period had ended and the September to March monthly payments were now due.
 

 EBM appealed. The BAP held that the license fees were “royalty payments” within the meaning of 11 U.S.C. § 365(n)(l)(B). The BAP also noted that EBM had submitted no evidence of a design defect justifying it in suspending the payments. The BAP affirmed the order of the bankruptcy court. EBM appeals.
 

 ANALYSIS
 

 No evidence has been presented by EBM of design defect, and so we do not consider this basis for EBM’s appeal but proceed to its principal contention.
 

 Section 365 of the Bankruptcy Code is an intricate statutory scheme governing the treatment by the trustee in bankruptcy or the debtor-in-possession of the executory contracts of the debtor. There is no dispute that the license agreement between EBM and the debtor was executory, i.e. there were obligations on both sides which to some extent were unperformed.
 
 See In re Frontier Properties, Inc.,
 
 979 F.2d 1358, 1364 (9th Cir.1992);
 
 In re Quintex Entertainment, Inc.,
 
 950 F.2d 1492, 1495-96 (9th Cir.1991). Consequently, the debtor had the right to reject the contract. However, section 365(n)(l) qualifies this right when the debtor is “a licensor of a right to intellectual property.” There is no dispute that the debtor is such a licensor.
 
 See
 
 11 U.S.C. § 101(56) (defining intellectual property). Consequently, EBM as “the licensee under such contract” could make an election. § 365(n)(l). EBM could either treat the contract as terminated as provided by (n)(l)(A), or EBM could retain its rights to the intellectual property for the duration of the contract and any period for which the contract might be extended by the licensee as of right under applicable nonbankruptcy law.
 
 Id.
 
 at (h)(1)(B).
 

 EBM elected to retain its rights. It was then obligated to “make all royalty payments due under such contract.”
 
 Id.
 
 at (n)(2)(B). By the terms of the statute EBM was also “deemed to waive any right of setoff it may have with respect to such contract under this title or applicable nonbankruptey law.”
 
 Id.
 
 at (n)(2)(C)(i).
 

 Section 365(n) has struck a fair balance between the interests of the bankrupt and the interests of a licensee of the bankrupt’s intellectual property. The bankrupt cannot terminate and strip the licensee of rights the licensee had bargained for. The licensee cannot retain the use of those rights without paying for them. It is essential to the balance struck that the payments due for the use of the intellectual property should be analyzed as “royalties,” required by the statute itself to be met by the licensee who is enjoying the benefit of the bankrupt’s patents, proprietary property, and technology. As the BAP observed, the legislative history buttresses this commonsense interpretation of “royalties” in the statute.
 
 See
 
 H.R.Rep. No. 1012, 100th Cong., 2d Sess., at 9 (1988).
 

 EBM’s principal argument is that the licensing agreement itself makes a distinction between what the agreement calls “license fees” and what the agreement calls “royalty payments.” The “royalty payments” in the agreement are percentages payable on the retail sales price of each machine sold by EBM; the “license fees” in the agreement
 
 *429
 
 are the sums here in dispute which' were to be paid for the license to manufacture and sell the vending machine. EBM’s argument is not frivolous. Nonetheless the parties by their choice of names cannot alter the underlying reality nor change the balance that the Bankruptcy Code has struck. Despite the nomenclature used in the agreement, the license fees to be paid by EBM are royalties in the sense of section 365(n). Section 365(n) speaks repeatedly of “licensor” and “licensee” with the clear implication that payments by licensee to licensor for the use of intellectual property are, indifferently, “licensing fees” or “royalties,” and, as royalties, must be paid by the licensee who elects to keep its license after the licensor’s bankruptcy. The same indifference to nomenclature in referring to a licensee’s lump sum or percentage-of-sales payments as royalties is apparent in patent cases.
 
 Zenith Radio Corp. v. Hazeltine Research, Inc.,
 
 395 U.S. 100, 138-139, 89 S.Ct. 1562, 1584-85, 23 L.Ed.2d 129 (1969);
 
 Automatic Radio Mfg. Co., Inc. v. Hazeltine Research, Inc.,
 
 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 (1950).
 

 EBM’s fallback position on appeal is that the debtor has been freed by its rejection of the contract from the obligations assumed by the debtor under Article V (“Representations, Warranties and Covenants by PFI”) of the agreement. These obligations included the debtor’s agreement to hold EBM harmless from any claim arising out of events preceding the agreement, to defend any infringement suit relating to technology or design included in the machine, and to prosecute at its own expense any infringers of the rights granted by the agreement. The debtor also represented that the design of the Stand-Alone Machine was free from material defects. These obligations raise the question whether it is proper to consider all of the license fees as royalties or whether some portion of the fees should be allocated to payment for the obligations assumed by the debtor. Neither the bankruptcy court nor the BAP addressed this possibility. They did not because EBM did not present this question to them. It is consequently too late to raise it here. EBM still has its unsecured claim for breach of the entire license agreement that § 365(g) accords it. As its appeal was non-frivolous, no attorney’s fees are awarded.
 

 As what the licensing agreement denominates “license fees” must be regarded as “royalty payments” for purposes of § 365(n)(l)(B), the judgment of the BAP is AFFIRMED.